The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Dan Harry BENNEY,
Defendant–Appellant.

No. 85CA0166.

Colorado Court of Appeals,
Div. I.

Dec. 3, 1987.

Rehearing Denied Jan. 14, 1988.

Certiorari Denied July 5, 1988.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., David R. Little, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Clifford J. Barnard, Boulder, for defendant-appellant.

METZGER, Judge.

Defendant, Dan Harry Benney, appeals a judgment of conviction of first degree murder, criminal solicitation to commit first degree murder, conspiracy to commit first degree murder, and crime of violence. Defendant asserts that: 1) he was denied his constitutional right of confrontation by the trial court's limitation of his cross-examination of a witness; 2) he was denied effective assistance of counsel; and 3) *U.S. Const.* art. I, § 10, cl. 1 and *Colo. Const.* Art. II, Sec. 11 the *ex post facto* clauses were violated by the trial court's denial of his request for sequestration of the jury. We affirm.

Defendant was convicted of hiring his friend, Glenne Fuqua, to kill defendant's wife, Elizabeth Benney. Fuqua confessed to murdering Elizabeth Benney on April 7, 1983, and to mutilating and disposing of her body. In return for sentence concessions, Fuqua agreed to testify against the defendant.

On the morning of trial, defense counsel sought a continuance of the trial or, in the alternative, permission to withdraw, arguing that the lack of sufficient funds for an investigation rendered him unprepared to proceed. Counsel further argued that if the court required him to proceed, his representation of defendant would not meet the constitutional standard of effective assistance of counsel. The trial court denied both motions.

Defense counsel also moved five days before and on the morning of trial to have the jury sequestered. The trial court denied these motions as well.

At trial, prior to Fuqua's testimony, the People called Fuqua's attorney as a witness. In an *in camera* hearing, the People established that Fuqua's attorney would testify as an expert on the mechanics of plea bargaining in criminal cases, and on the specifics of the plea bargain which he and his client had arranged. Defense counsel argued that such testimony constituted a waiver of the attorney-client privilege in its entirety, and that Fuqua's attorney should be subject to a complete cross-examination concerning his conversations with Fuqua. The court limited defendant's cross-examination of the attorney to the advice given in reaching the plea bargain. Fuqua's attorney was then allowed to testify in the presence of the jury.

The jury found the defendant guilty of all charges. He filed his notice of appeal, but then requested this court to remand the matter to the trial court for a hearing on his Crim.P. 35(c) motion in which he argued the issue of ineffective assistance of counsel. The trial court denied defendant's motion after hearing, and this appeal followed.

I.

Defendant first argues that the trial court denied him his constitutional right to confront and cross-examine witnesses by unreasonably limiting the scope of cross-examination of Fuqua's attorney. We do not agree.

In order to give proper scope to the right of confrontation, a court must allow broad cross-examination of a prosecution witness as to bias, prejudice, and motivation for testifying. *People v. Bowman,* 669 P.2d

1369 (Colo.1983). However, an accused's right to confront and to cross-examine witnesses is not absolute and may be limited to accommodate other legitimate interests in the criminal trial process. The competing interests must be carefully scrutinized. *People v. Cole,* 654 P.2d 830 (Colo.1982).

■ Here, the trial court carefully balanced defendant's need for cross-examination against the need to preserve the attorney-client privilege and struck a balance accommodating both interests. The defendant had ample opportunity to inquire into any possible bias Fuqua's attorney might have had, stemming from his representation of Fuqua. Moreover, the court carefully restricted the direct and cross-examinations to the advice the attorney gave Fuqua concerning the advisability of the plea bargain. Additionally, Fuqua himself was subjected to a rigorous and thorough cross-examination, which included extensive impeachment concerning his varying versions of his participation in the murder. Thus, we perceive no violation of defendant's constitutional rights by the court's limitation of cross-examination.

## II.

Defendant next argues that he was denied effective assistance of counsel. Specifically, he raises seven separate instances in which he allegedly received inadequate representation. However, a review of the transcript of the Crim.P. 35(c) hearing reveals that six of these items were not raised at the hearing. Thus, we will not address them here. *People v. Herrera,* 182 Colo. 302, 512 P.2d 1160 (1973).

Defendant's remaining contention is that his trial counsel failed to investigate the facts fully or to interview the witnesses completely and, thus, was unable to try the case properly. We perceive no constitutional defect in the representation defendant received.

■ A defendant in a criminal proceeding is entitled to receive the reasonably effective assistance of an attorney acting as his diligent and conscientious advocate. *Strickland v. Washington,* 466 U.S. 668,

104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *People v. Norman,* 703 P.2d 1261 (Colo.1985). Such representation includes a pre-trial investigation sufficient to reveal potential defenses and weaknesses in the prosecution's case. *People v. White,* 182 Colo. 417, 514 P.2d 69 (1973). However, in a Crim.P. 35 proceeding, the defendant has the burden to show inadequate representation, and a conviction will not be set aside unless, based on the record as a whole, there was a denial of fundamental fairness. *People v. Dillard,* 680 P.2d 243 (Colo.App.1984).

■ The record as a whole demonstrates that trial counsel's representation did not fall below the constitution standard. Trial counsel had benefit of the services of a court-appointed investigator. At the Crim.P. 35(c) hearing, trial counsel testified that he prepared for trial by: 1) reviewing more than 500 pages of discovery provided by the People, including police reports and other documents; 2) consulting with the investigator and defendant on an almost daily basis; and 3) interviewing a number of the witnesses endorsed by the People. Additionally, trial counsel concentrated his investigation on Fuqua who was, admittedly the People's chief witness. The trial court found this preparation to be adequate and we agree.

Moreover, at the Crim.P. 35(c) hearing, trial counsel was unable to identify any specific evidence helpful to defendant that he should have presented. Instead, trial counsel could only state that he "wished" he could have interviewed other witnesses who "might" have had evidence helpful to defendant. Under these circumstances, defendant failed to carry his burden.

We reject the defendant's contention concerning ineffective assistance of counsel for another reason. During the pre-trial phase of the case, defendant repeatedly asked the trial court to appropriate additional funds to pay for the services of a court-appointed investigator. In each instance, the trial court found, on supporting evidence, that defendant had the financial resources to pay for the investigator, but chose to expend his funds on personal luxuries. Nonetheless, the trial court did ap-

propriate $3,000 to pay for an investigator and $600 for a consultation with a handwriting expert. By now contending that his Sixth Amendment rights were violated by inadequate investigation, the defendant, in effect, is attempting to "whipsaw" the judicial system by sabotaging his own trial and then claiming reversible error. *See People v. Arguello,* 737 P.2d 442 (Colo.App. 1987) (Sternberg, J., dissenting). We cannot countenance such conduct.

### III.

Defendant's final argument is that the trial court's denial of his request for sequestration of the jury violated the *ex post facto* clauses of the United States and Colorado Constitutions. Again, we do not agree.

On April 7, 1983, when Elizabeth Benney was murdered, Crim.P. 24(f) provided in pertinent part:

"In non-capital cases jurors may be permitted to separate during all trial recesses after cautionary instructions by the court as to their conduct.... In capital cases, however, jurors shall remain in the bailiff's custody during all recesses from the time the jury is selected until discharged by the court."

*See Jones v. People,* 711 P.2d 1270 (Colo. 1986) (Jury must be sequestered in all first degree murder cases unless waived by defendant).

However, when defendant was ultimately charged with and tried for the murder of Elizabeth Benney, Crim.P. 24(f) had been amended. It then read:

"(1) In all cases, in the court's discretion, jurors may be sequestered or permitted to separate during all trial recesses, both before and after the case has been submitted to the jury for deliberation. Cautionary instructions as to their conduct during all recesses shall be given to the jurors by the court."

*See People v. Avery,* 736 P.2d 1233 (Colo. App.1986)

Defendant twice moved for sequestration of the jury, but his motions were denied. He now argues that these denials constituted a retroactive application of amended Crim.P. 24(f), in violation of *U.S. Const.* art. I, § 10, cl. 1, and *Colo. Const.* Art. II, Sec. 11.

The *ex post facto* clauses of the United States and Colorado Constitutions operate primarily to bar the retroactive application of *legislative* changes which make previously lawful behavior a criminal offense or which enhance criminal penalties. *See Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981); *United States v. Stratton,* 779 F.2d 820 (2d Cir. 1985). These prohibitions do not, by their own terms, apply to the judicial branch of government. *Marks v. United States,* 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977). However, retroactive application of a procedural rule may violate due process if the judicial action enlarges the scope of a criminal statute so as to define previously lawful behavior as criminal, *Marks v. United States, supra,* or if the procedural changes impair the defendant's substantial rights. *United States v. Stratton, supra.*

We find no violation of defendant's rights here. Crim.P. 24(f) is a procedural rule promulgated by our supreme court. The amendment of the rule did not make any previously lawful behavior criminal, nor did it enlarge the scope of a criminal statute.

Moreover, the amendment did not affect any substantial rights of the defendant. Every defendant is constitutionally guaranteed a right to a fair trial by a panel of impartial jurors. *See generally Fields v. People,* 732 P.2d 1145 (Colo.1987). Nothing in the record before this court suggests that the jury was anything but fair and impartial. Thus, even if we assume *arguendo* that application of the amended rule was retroactive in nature, we find no violation of defendant's constitutional rights.

Judgment affirmed.

PIERCE and CRISWELL, JJ., concur.