Robert WILLIAMSON,
Petitioner–Appellee,

v.

Ed JORDAN, Sheriff of Weld County,
Colorado, and Colorado Department of
Corrections, Respondents–Appellants.

No. 88SA445.

Supreme Court of Colorado,
En Banc.

Sept. 10, 1990.

Joseph P. Genchi, Estes Park, for petitioner-appellee.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Terrance A. Gillespie, Asst. Atty. Gen., Human Resources, Denver, for respondents-appellants.

Justice MULLARKEY delivered the Opinion of the Court.

Ed Jordan, Sheriff of Weld County, and the Colorado Department of Corrections (the Department) appeal the judgment of the Weld County District Court granting a writ for habeas corpus requiring the Department to discharge Robert Williamson from custody. We have jurisdiction of this appeal pursuant to section 13–4–102(1)(e), 6A C.R.S. (1987). The Department contends that the trial court erred in discharging Williamson from custody and in rejecting the Department's administrative construction of section 17–22.5–303(4), 8A C.R.S. (1986),[1] the statutory provision governing the allocation of good time credits to persons reincarcerated for violating the terms or conditions of their parole. We reverse.

## I.

On January 10, 1986, Williamson was sentenced to a term of four years in the custody of the Department following his conviction of possession with intent to sell and sale of 28 grams or more of cocaine, a class 3 felony in violation of section 12–22–303(6.5), 5 C.R.S. (1985). Williamson was given ten days presentence confinement credit.

On October 2, 1987, Williamson was released on a one year period of parole after having served one year, eight months and twenty-two days of the four-year sentence imposed by the court. On February 27, 1988, Williamson was rearrested for violating conditions of his parole. On March 24, 1988 his parole status was revoked, and he was returned to the custody of the Department for a period of eighteen months. According to the Department, he was eligible, with the award of good time, for a second parole on December 24, 1988.

On July 21, 1988, Williamson filed a petition for a writ of habeas corpus in the district court alleging that he was eligible for immediate release and discharge from the custody of the Department. Williamson claimed that he had accumulated sufficient "good time" and "earned time" credits under sections 17–22.5–301 and 17–22.5–302, 8A C.R.S. (1986), so as to be entitled to unconditional release under section 16–11–310, 8A C.R.S. (1986).[2] Williamson's argument is based on his theory that the good time and earned time credits which he accumulated prior to being paroled should be credited against his sentence entitling him to immediate release.

A hearing was held on his petition on November 2, 1988. The trial court held that section 16–11–310 when read together with sections 17–22.5–301 and 17–22.5–302 required an inmate to be discharged from the custody of the Department when he had served the sentence imposed by the court less any credits. In making its ruling, the court rejected the Department's position that the good time and earned time credits only serve to reduce the time an inmate must serve before being considered for parole or discharge pursuant to section 17–22.5–303(4), 8A C.R.S. (1986). The court then ordered the petitioner discharged from custody.

## II.

■ This case concerns the statutory class of offenders serving sentences for crimes committed on or after July 1, 1979 but before July 1, 1985. An inmate in this category must be paroled upon reaching the parole date as determined by deducting vested good time and earned time credits from the person's sentence. *Thiret v.*

---

1. Because most of the relevant statutory sections have not been amended since this case began, we have cited to the current statutes throughout this opinion unless otherwise noted.

2. Section 16–11–310 was repealed by the legislature effective July 1, 1988. Ch. 124, § 25, 1988 Colo.Sess. Laws 707, 715.

746

*Kautzky,* 792 P.2d 801, 805 (Colo.1990). Under this parole system, the Department automatically assumes that inmates are entitled to receive good time credits and these credits are disallowed only after misconduct has been established. *See Price v. Mills,* 728 P.2d 715, 718 (Colo.1986).

Williamson was sentenced for a crime committed on December 14, 1984, and therefore, any rights which he may have to an early release from the sentence imposed by the court pursuant to section 18–1–105, 8B C.R.S. (1986), are controlled by the provisions of section 17–22.5–303(4), 8A C.R.S. (1986).[3] That section provides in pertinent part:

As to any person sentenced for a class 2, class 3, class 4, or class 5 felony committed on or after July 1, 1984, but before July 1, 1985, the division of adult services shall either release an offender on his parole eligibility date, pursuant to the determination made by the state board of parole, or shall provide up to three years of parole for any offender who is determined by the state board of parole to present a high risk to the general population upon release from incarceration.... Upon a determination that the conditions of parole have been violated in a parole revocation proceeding, the state board of parole shall continue the parole in effect, modify the conditions of parole if circumstances then shown to exist require such modifications, or revoke the parole and order the return of the offender to the institution in which he was originally received for a period of not more than five years. In no event shall any period of reincarceration, subsequent term of parole, and sentence actually served exceed the sentence imposed pursuant to section 18–1–105, C.R.S..... The good time deduction authorized by section 17–22.5–

301 shall apply to periods of reincarceration provided for in this section.

■ Therefore, according to the statutory scheme, when an offender who has been granted parole violates the terms of his parole, the parole board has two options. It may continue the parole in effect, modifying the conditions of the parole if circumstances require such modification, or it may revoke the parole and return the offender to the institution in which he was originally received for a period of not more than five years. If the parole is revoked, the period of time which the offender initially spent on parole between his release and his return to custody "shall not be considered any part of the term of his sentence." § 17–22.5–203(1), 8A C.R.S. (1986); *Santisteven v. Johnson,* 751 P.2d 621 (Colo.1988).

Here, the trial court relied on the following statutes in determining whether good time credits and earned time credits as provided for in sections 17–22.5–301 and 17–22.5–302 are to be subtracted from the total sentence that Williamson could serve or whether they are only to be credited against his parole eligibility date. Section 16–11–310 provides:

**Release from incarceration.** Except as provided in section 7 of article IV of the state constitution relating to the power of the governor to grant reprieves and pardons, an incarcerated person shall be unconditionally released and discharged. upon the expiration of his sentence, less the deductions authorized in article 22.5 of title 17, C.R.S.

Section 17–22.5–301 provides as follows:

(1) Each person sentenced for a crime committed on or after July 1, 1979, but before July 1, 1981, whose conduct indi-

**3.** We interpreted section 17–22.5–303(4), 8A C.R.S. (1986) in *Anderson v. Kautzky,* 786 P.2d 1082 (Colo.1990). However, in *Anderson,* we addressed the allocation of good time credits earned subsequent to reincarceration and held that "[i]n view of the plain language of section 17–22.5–303(4) and the legislative policy expressed therein, we conclude that a parole violator may not be reincarcerated for a period of time in excess of the balance of the time to be served on that person's original sentence and

that for offenses governed by that statute the Department must credit vested good time earned by that person to that adjusted period of reincarceration." *Id.* at 1085. The *Anderson* issue is not involved in this case because the Parole Board ordered Williamson to be reincarcerated for eighteen months. This period of reincarceration does not exceed the balance remaining on Williamson's original four year sentence when the time served (1 year, 8 months, and 22 days) is deducted.

cates that he has substantially observed all of the rules and regulations of the institution or facility in which he has been confined and has faithfully performed the duties assigned to him shall be entitled to a good time deduction of fifteen days a month from his sentence....

(2) Each person sentenced for a crime committed on or after July 1, 1981, but before July 1, 1985, shall be subject to all the provisions of this part 3; except that the good time authorized by this section shall vest semiannually and no more than ninety days of good time may be withheld by the department in any six-month period of sentence..

Also, section 17–22.5–302, pertaining to earned time, states:

(1) In addition to the good time authorized in section 17–22.5–301, earned time, not to exceed thirty days for every six months of incarceration, may be deducted from the inmate's sentence upon a demonstration to the department by the inmate that he has made substantial and consistent progress [in the areas defined]....

The trial court concluded that the above statutes clearly instructed the Department to "add the subsequent term of parole, the sentence actually served, and the sentence imposed, and determine whether that equals or exceeds the period of reincarceration. If it does, then the Defendant can not· be reincarcerated."

The Department has a different interpretation of the relevant statutes. At the hearing on Williamson's petition for writ of habeas corpus, Donna Lohnas, records manager for the Department, testified as to how Williamson's subsequent reparole date was calculated. On direct examination, Lohnas testified as follows:

Q: [by attorney for Appellants]: Now, Ms. Lohnas, so for what period of time was the parole revoked?

A: [Lohnas]: The parole was revoked for a period of 18 months.

Q: So you again calculated his parole date from March 24, 1988?

A: That is correct.

Q: What did you take into account in recalculating the parole date?

A: Pursuant to the section that I previously cited in the statute of 17–22.5–303, paragraph 4, upon revocation, the good time deduction authorized in 17–22.5–301 applies to reincarceration period.

So in Mr. Williamson's case we projected then the good time on the 18–month revocation or reincarceration period by the State Board of Parole or half to arrive at nine months, which was then added to the date that he was revoked of March 24, 1988, to arrive at our mandatory reparole date of December 24, 1988.

Q: You say mandatory reparole. He will then be put on parole?

A: That is correct.

Q: Ms. Lohnas, is there any limiting factor on the Department of Corrections in terms of how long they can hold someone?

A: Yes. Pursuant to the statute upon revocation there's what we refer to as the but in no event language in there which states, "In no event shall any period of reincarceration, subsequent term of parole, and sentence actually served exceed the sentence imposed pursuant to Section 18–1–105, C.R.S."

We agree with the Department's statutory construction and we find that our recent opinion in *Bynum v. Kautzky,* 784 P.2d 735 (Colo.1989) is dispositive of the issue in this case. In *Bynum* we concluded that the earned time and good time provisions of sections 17–22.5–301 and 17–22.5–302, 8A C.R.S. (1986), do not preclude the reincarceration of an inmate for violation of his parole, but rather, these sections, together with section 16–11–310, were only intended to establish the mandatory date of release on parole. Therefore, we held that "with respect to parole, the good time and earned time credits 'vest' only for the purpose of determining parole eligibility, not for purposes of determining whether reincarceration is possible once a former inmate has violated his parole." 784 P.2d at 739.

In *Bynum* our review of the statutes led us to conclude that sections 16–11–310, 17–

22.5–301(2), 17–22.5–302(3), and 17–22.5–303(2) do not preclude the reincarceration of a person for violating his parole even though his time served, together with his good time and earned time credits accrued before his parole, equaled or exceeded the length of the sentence originally imposed. 784 P.2d at 738. We reached this conclusion based on several considerations. First, we noted that section 16–11–310 as originally enacted did not intend to preclude the reincarceration of a person who has violated his parole. Second, we found that the earned time and good time provisions of sections 17–22.5–301 and 17–22.5–302 themselves did not preclude the reincarceration of an inmate for violation of his parole. We stated, "[c]learly, these sections, together with section 16–11–310, were only intended to establish the mandatory date of release on parole." *Id.*, at 739.

 Accordingly, the Department's interpretation of the statutes was correct. The credits which Williamson accumulated prior to his parole served only to make him eligible for parole. Once he violated his parole and was reincarcerated, he began to earn new credits which eventually would make him eligible for reparole. His prior credits from his original period of incarceration, however, were exhausted when he was placed on parole and did not spring back into existence when he was reincarcerated after violating his parole. Williamson was not entitled to be immediately discharged from custody and the trial court erred by granting his habeas corpus petition. We reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.