**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Franklin S. VECCHIO, Defendant–Appellant.**

**No. 89CA1845.**

Colorado Court of Appeals, Div. C.

March 28, 1991.

Rehearing Denied May 2, 1991.

Certiorari Denied Oct. 28, 1991.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Angela D. Martinez, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Leventhal & Bogue, P.C., Victoria J. Koury, Denver, for defendant-appellant.

Opinion by Judge KELLY *.

The defendant, Franklin S. Vecchio, appeals a 14–year sentence imposed upon him by the trial court following his pleas of guilty to theft, embezzlement of public property, and preparing a false tax return which were entered pursuant to plea bargain. His principal contentions are that the trial court erred in denying his motion for change of judge, that the 14–year sentence was excessive, and that the sentences were invalid because each sentence was not imposed while he was present in the courtroom. The first two arguments implicate the effect to be given to a large number of "victim impact statements" collected by the district attorney which expressed considerable vitriol toward the defendant and the offenses committed by him, together with statements of opinion about the kind and duration of an appropriate sentence. We affirm.

I.

After the accumulation and filing of over a hundred so-called "victim impact statements," the defendant filed a motion pursuant to § 16–6–201, C.R.S. (1986 Repl.Vol. 8A) and Crim.P. 21 for change of judge supported by two affidavits calling for the trial judge to disqualify himself and to request the appointment of a substitute judge to impose sentence upon the defendant.

The theory behind the collection of these victim impact statements evidently was that all residents of the community were victims of the theft of public property and might properly express their views about the effect of the offenses on them and the community as well as their views of the

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl. Vol. 1OB).

appropriate sentence which should be imposed upon the defendant. In addition, a considerable number of these statements expressed dissatisfaction with sentences which had previously been imposed by the trial judge's predecessor in office in two unrelated cases involving public figures which, according to the motion and affidavits, had resulted in the removal from office at the retention election of the prior judge.

From these facts, which were taken by the trial judge as true, the defendant's motion and affidavits concluded that there existed an "informal agreement" in the community to mount a campaign in opposition to the trial judge's retention in office unless he imposed the maximum allowable sentence upon this defendant. Thus, the reasoning goes, the "Court is at the mercy of an angry community," and "it must be presumed that this Court is 'interested' in the outcome of this case."

While we have some reservations about whether these inferences can properly be drawn from the facts stated, the heart of the question is whether a presumption is mandated by law that the court was "interested" in the case as that term is used in § 16–6–201(1)(d), C.R.S. (1986 Repl.Vol. 8A). That is, are the grounds stated legally sufficient to require disqualification? We hold, as did the trial court, that they are not.

■ Whether judicial recusal is required must be determined by the legal sufficiency of the averments in the motion and affidavits filed by the movant. *James v. People*, 727 P.2d 850 (Colo.1986). To be legally sufficient, a motion to disqualify must state facts from which it can be reasonably inferred that the judge has such bias, prejudice, or bent of mind that he will be unable to deal fairly with the party seeking the recusal. *People v. Drake*, 748 P.2d 1237 (Colo.1988).

■ It is incumbent upon the trial judge to recuse himself once facts have been set forth that create a reasonable inference of a "bent of mind." *Wright v. District Court*, 731 P.2d 661 (Colo.1987). Either actual prejudice on the part of the trial judge or mere appearance of prejudice may require disqualification of the judge. *Estep v. Hardeman*, 705 P.2d 523 (Colo. 1985).

■ In ruling the allegations here legally insufficient to require disqualification, the trial judge observed, among other things:

"Cases which come before this Court are often of such nature as to arouse public passion.... [I]t is not reasonable to assume prejudice on the part of the Court from public passion or outcry which may have arisen in a particular case. If a Court were to find that the grounds in a motion such as this one were sufficient ... [j]udges would virtually be unable to serve in communities where they lived."

We agree with these statements.

Moreover, every sitting judge faces a future retention election and is aware that his conduct in office will have a direct impact upon the outcome thereof. There can be no legal presumption that a judge is intimidated by the outrage of the community in which he serves; retribution at the polls is a risk undertaken by every judicial candidate upon acceptance of appointment in a judicial position. To put it in general parlance, "it goes with the territory."

To hold otherwise is to indulge a legal presumption that a judge violates Colorado Code of Judicial Conduct Canon 3(A)(1), which requires, among other things that, "A judge should be unswayed by partisan interest, public clamor, or fear of criticism." This we cannot and do not do. That such a presumption is unwarranted is demonstrated daily by the courageous independence of a forthright judiciary applying legal principles faithfully and fearlessly, often in the face of the most vocal criticism.

There was no allegation here that the trial judge was in fact intimidated by any "informal agreement" which may have existed in the community or that he did indeed entertain a "bent of mind" against this defendant. Under these circumstances, the record does not support a finding either of actual, or the appearance of,

bias, prejudice, or interest against the defendant.

## II.

■ The defendant's argument that his sentence was excessive is also baseless. Sentencing is discretionary, *Flower v. People*, 658 P.2d 266 (Colo.1983), and, because a trial court is more familiar with the defendant and the facts of the case than the appellate court, it has wide latitude in determining an appropriate sentence. *People v. Watkins*, 684 P.2d 234 (Colo.1984).

■ A reviewing court will not modify a sentence unless the sentencing court's wide latitude was marred by clear abuse of discretion. *People v. Lowery*, 642 P.2d 515 (Colo.1982). If a sentence is within the range required by law, is based on appropriate considerations as reflected in the record, and is factually supported by the circumstances of the case, the reviewing court must uphold the sentence. *People v. Fuller*, 791 P.2d 702 (Colo.1990).

■ Here, the "truly exceptional situation" which authorizes an appellate court to substitute its sentencing judgment for that of the trial court does not exist. *See People v. Vigil*, 718 P.2d 496 (Colo.1986). The offenses were committed by the defendant over a period of more than seven years; his intent to defraud is evident; the defendant was in a position of trust in the community, a position he systematically violated; and, because the victims were "intangible," the scope of the crimes could never be properly evaluated. The trial court recognized the intentional and systematic diversion of public funds from services to impoverished children as having a devastating effect upon the community.

Under such circumstances, it is not unreasonable to suppose that a stiffer sentence would result in the deterrence of others from similar crimes. Since prisons exist to punish so-called "white collar" crimes as well as for those of physical violence, *People v. McKnight*, 41 Colo.App. 372, 588 P.2d 886 (1978), *rev'd on other grounds*, 199 Colo. 313, 607 P.2d 1007 (1980), this sentence is not beyond the limits of the trial court's discretion merely because the trial court placed more emphasis on deterrence and punishment than upon rehabilitation.

Because there is nothing in the record showing a linkage between the "victim impact statements" and either the amount of the restitution, which was part of the plea bargain, or the duration of the sentence, we need not address the propriety of the District Attorney's solicitation and filing of such statements.

## III.

Finally, the defendant argues that the trial court's failure to pronounce sentence upon him orally as to each count at the conclusion of the sentencing hearing denied him his right of allocution and renders the sentences illegal. We disagree.

■ The right of allocution gives a defendant the right to be present in court to speak in mitigation of punishment before sentence is pronounced. *People v. Emig*, 177 Colo. 174, 493 P.2d 368 (1972).

■ Here, at the conclusion of the sentencing hearing with defendant and his counsel present, the court pronounced a sentence of 14 years to the Department of Corrections. Thereafter, a mittimus issued reflecting concurrent terms of 14 years for theft, 4 years for embezzlement, and 4 years for preparing a false tax return.

The sentence of 14 years pronounced by the court is exactly what was reflected in the mittimus. When so sentenced, the defendant was present in court with counsel, was given the opportunity to, and did, address the court at length. Hence, the defendant's right to allocution was fully protected, and the sentence is valid.

The sentence is affirmed.

NEY and DAVIDSON, JJ., concur.