The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Dennis Reed GRENEMYER,
Defendant-Appellant.

Nos. 91CA0019, 91CA1820.

Colorado Court of Appeals,
Div. I.

Feb. 13, 1992.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Catherine P. Adkisson, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Dennis Reed Grenemyer, pro se.

Opinion by Judge REED.

In these consolidated appeals, defendant, Dennis Reed Grenemyer, appeals the orders of the trial court denying his Crim.P. 35(c) motion for post-conviction relief and the dismissal of his petition for writ of habeas corpus (transferred to us by the Colorado Supreme Court for consideration under Crim.P. 35). We affirm.

I.

Defendant contends that his right to a speedy trial established by § 18–1–405, C.R.S. (1986 Repl. Vol. 8B) and Crim.P. 48(b) was denied. We disagree.

Section 18–1–405(6)(g)(I), C.R.S. (1986 Repl.Vol. 8B) excludes from the computation of the speedy trial time limitation, any delay occasioned at the prosecution's request because of the unavailability of material evidence when the prosecution has also demonstrated a reasonable basis for believing that such evidence will be available at a later date. Almost identical language appears in Crim.P. 48(b)(6)(VII)(A) specifically providing for exclusion of time delays necessary to accommodate the prosecution in obtaining evidence material to its case.

Here, as the People point out, defendant was brought to trial well within the six-month statutory speedy trial period set forth in § 18–1–405, C.R.S. (1986 Repl.Vol. 8B) and Crim.P. 48. The period of delay between August 26, 1985, through November 12, 1985, as the trial court found, was attributable to the inability of the prosecution, despite its exercise of due diligence, to obtain the victim's presence for trial. It was demonstrated by the prosecution that the victim's testimony was material and that he would be available to testify at a

later date. These factors authorized a continuance and thereby extended the speedy trial time to February 26, 1986. Thus, regardless of waiver considerations, defendant was brought to trial in a timely manner.

## II.

■ Defendant's next assertion is that the trial judge was biased against him. Defendant claims that, at or about the time the judge was appointed to the bench, defendant, then a lawyer, became affiliated with an individual who succeeded to the judge's law practice. Defendant also claims that he represented the judge, and a business with which the judge was associated, in several legal matters. It is alleged further that there was an untimely mailing of an order of court. According to defendant, these matters created an appearance of prejudice which prevented the judge from dealing fairly with his case. Hence, he contends reversal of the judgment of conviction is required. We disagree.

■ Judicial recusal is required pursuant to motion once facts have been established from which it can be reasonably inferred that the judge has such bent of mind that he would be unable to deal fairly with the party seeking recusal. *People v. Vecchio,* 819 P.2d 533 (Colo.App.1991). Evidence of either actual prejudice or the appearance of prejudice may suffice to require recusal. *Estep v. Hardeman,* 705 P.2d 523 (Colo. 1985).

A motion for recusal must be verified and supported by affidavits of at least two credible witnesses not related to defendant. Section 16–6–201, C.R.S. (1986 Repl.Vol. 8A); Crim.P. 21(b). Whether recusal is required will thus depend on whether defendant's motion and supporting affidavits set forth legally sufficient facts upon which bias or prejudice may be implied. *James v. People,* 727 P.2d 850 (Colo.1986).

■ The judge addressing a motion for recusal is not permitted to evaluate the truth or falsity of the allegations and must accept as true the allegations of fact stated in the motion and affidavits. If grounds for disqualification are shown, the judge must enter an order disqualifying himself. Section 16–6–201, C.R.S. (1986 Repl.Vol. 8A).

Here, defendant failed to submit affidavits in accordance with the requirements of the statute and the rule. Instead, defendant supplied the allegations himself which purported to prove that out of his previous association with the judge, there arose a bias or prejudice against the defendant. The record fails to disclose, however, how or why this could have been true. We thus hold, as the trial court did, that there were insufficient grounds for disqualification.

## III.

■ Defendant further contends that his conviction under instructions that did not require the jury to specify the act upon which they relied in determining his guilt is unconstitutional. This contention is without merit.

Our cases establish that jury instructions need not specify which overt act among several possibilities was the means by which the crime at issue was committed. The general requirement is rather that "jurors should be instructed that in order to convict the defendant, they must either unanimously agree that defendant committed the same act or acts or that defendant committed all of the acts described...." *See Thomas v. People,* 803 P.2d 144 (Colo. 1990).

Here, an instruction required the jury to be unanimous in finding "one specific act of sexual contact [which] occurred between the 16th day of February 1984, and the 7th day of April 1984." The instruction further emphasized the necessity of unanimity in finding "that the specific act occurred at a particular time."

These instructions obviously required unanimous agreement on a predicate factual issue underlying the verdict and were thus adequate under *Thomas.* Defendant's argument is therefore without merit.

## IV.

Defendant's next contention relates to the admission of similar transaction evidence. His initial appeal to this court contested the trial court's rulings in this regard on precisely the same basis and were resolved adversely to defendant. *People v. Grenemyer*, (Colo.App. No. 86CA628, March 31, 1988) (not selected for official publication). Consequently, review at this time would be nothing more than a second appeal of the same issue, and we decline to address it again.

## V.

■ Defendant contends that, in computing the expiration date of his original sentence, accumulated good time and earned time credits must be deducted in addition to time served, with the result being that he is presently entitled to unconditional release from the custody of the Department of Corrections. We disagree.

Defendant's underlying thesis—that good time and earned time credits are deducted from an inmate's sentence in determining the date of his release pursuant to § 16–11–310, C.R.S. (1986 Repl. Vol. 8A)—has been asserted before, though in slightly different contexts, and each time has been rejected by our supreme court. *Jones v. Martinez*, 799 P.2d 385 (Colo.1990); *Williamson v. Jordan*, 797 P.2d 744 (Colo. 1990); *Bynum v. Kautzky*, 784 P.2d 735 (Colo.1989).

In *Williamson* and *Bynum*, the supreme court held that the good time and earned time provisions do not operate to preclude reincarceration of a person for violating parole despite the fact that his time served, together with good time and earned time credits accrued prior to parole, exceeded the length of the sentence imposed. The court reasoned that such credits vest only for purposes of determining parole eligibility and could not be used to diminish or eliminate a term of reincarceration based on subsequent parole violations. Rejecting contentions that once vested, good time and earned time credits accrued against the term of sentence and could not be withdrawn, the court noted that if the statute

were read in such manner then the right to diminishment would nullify an appropriate term of reincarceration mandated by the General Assembly.

In *Jones*, the determinative issue was whether, with respect to crimes committed after July 1, 1979, good time and earned time credits constitute service of sentence or merely provided a basis for determining parole eligibility. Again, even though defendant's actual time served plus his presentence confinement and accrued good time and earned time credits exceeded the sentence imposed, the court concluded he was not entitled to release. Instead, the *Jones* court held that good time and earned time had no effect on the term of sentence and, thus, that defendant was required to serve the remainder of his term subject to the conditions of parole.

Here, defendant is seeking diminishment of sentence through recognition of good time and earned time credits, thereby accelerating his release date. Under *Jones, Bynum,* and *Williamson,* such credits may not be recognized for that purpose. Accordingly, the trial court was correct in declaring that post-conviction relief was not available to defendant.

## VI.

### A.

■ Defendant also argues that application of *Jones, Bynum,* and *Williamson* retrospectively to eliminate accrued good time and earned time operates as an increase in punishment in violation of federal and state constitutional bans against *ex post facto* laws. We disagree.

■ Under U.S. Const. art. I, § 10, and Colo. Const. art. II, § 11, the enactment of an *ex post facto* law is prohibited. An *ex post facto* law is one which imposes punishment for an act which was not a crime when it was committed or which imposes additional punishment upon acts then proscribed. *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964).

■ The prohibitions against *ex post facto* laws are limitations on the power of the legislature and generally are not construed as being applicable to judicial decisions. *Marks v. United States,* 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977); *Aue v. Diesslin,* 798 P.2d 436 (Colo.1990); *People v. Benney,* 757 P.2d 1078 (Colo.App. 1987). Nevertheless, judicial decisions may have the effect of *ex post facto* legislation and, thus, may be found to violate a defendant's rights to due process.

■ Due process guarantees protect an individual from the retroactive effect of a judicial decision only when that decision serves to deprive the individual of fair warning that his conduct will give rise to criminal liability or punishment. *See Bouie v. City of Columbia, supra; Aue v. Diesslin, supra.* In *Bouie,* the United States Supreme Court stated that:

> An unenforceable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law, such as Art. I, § 10 of the constitution forbids.... If a state legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a. State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction.

■ The due process approach set forth in *Marks* and *Bouie* was adopted by our supreme court in *Aue v. Diesslin, supra,* and by this court in *People v. Benney, supra.* Under this approach two inquiries are critical to a determination of whether there has been a due process violation based on retrospective consequences of a judicial decision, namely: 1) whether the judicial decision had the effect of enhancing punishment for a previously committed crime; and (2) whether the judicial decision was "unforeseeable."

Applying the analysis of *Marks, Bouie,* and *Aue* to the facts of this case, we hold that no due process or *ex post facto* basis exists for requiring that defendant be permitted to accrue good time and earned time credits against the term of his sentence. We conclude that the decisions in *Jones,*

*Bynum,* and *Williamson* neither subjected defendant to punishment more severe than that required by the law in effect when the crime with which he was convicted occurred nor denied him benefits of sentencing time computation provisions otherwise applicable to his case.

Moreover, we conclude that the supreme court's holdings do not constitute so unforeseeable an interpretation of the good time and earned time credit provisions as to deprive defendant of fair warning concerning the effect upon his sentence. *See Bouie v. City of Columbia, supra; Aue v. Diesslin, supra.* That defendant had fair warning of the interpretation given the Inmate & Parole Time Computation provisions is demonstrated by the rationale of the court's holdings and the law in effect at the time defendant was sentenced.

Surely, it was foreseeable that § 16–11–310, C.R.S. (1986 Repl.Vol. 8), upon which defendant relies, would not be construed in such manner as to defeat the purpose or eliminate the requirement of parole. *Bynum v. Kautzky, supra.* The possibility of reincarceration for violating conditions of parole necessarily rejects the concept of an incarcerated person meriting diminution of sentence by credits for good behavior prior to being released on a conditional basis. *See* § 17–22.5–303(2), C.R.S. (1986 Repl.Vol. 8A); *see also* § 17–22.5–203(3), C.R.S. (1986 Repl. Vol. 8A).

Furthermore, the earning of good time credits against the term of sentence would be totally incompatible with the discretionary parole scheme applicable to persons, such as defendant, convicted of sex offenses. *See Aue v. Diesslin, supra; Thiret v. Kautzky,* 792 P.2d 801 (Colo.1990).

Thus, we reject defendant's contention and find no violation of his constitutional rights.

## B.

We also reject defendant's equal protection challenge as he has not identified a class of similarly situated persons who have not been treated equally with respect

to the application of good time credits. *Aue v. Diesslin, supra.*

The order denying plaintiff's motion for post-conviction relief and the order dismissing the writ of habeas corpus are affirmed.

PIERCE and TURSI, JJ., concur.