91 P.3d 443 (2004)
The PEOPLE of the State of Colorado,
In the Interest of S.G., S.G., and S.G., Children,
Upon the Petition of the Douglas County Department of Human Services, Petitioner-Appellee, and
Concerning J.G., Respondent-Appellant.
No. 01CA2036.
Colorado Court of Appeals, Div. III.
February 26, 2004.
Certiorari Denied May 24, 2004.[*]
*447 Dill Dill Carr Stonbraker & Hutchings, PC, Daniel W. Carr, Denver, Colorado, for Petitioner-Appellee.
Holland & Pagliuca, P.C., Jeffrey S. Pagliuca, Heather R. Hanneman, Denver, Colorado, for Respondent-Appellant.
Opinion by Judge NIETO.
J.G. (father) appeals the judgment terminating his parental rights with respect to his three daughters and the order denying his C.R.C.P. 60(b) motion. We affirm.
Father was tried for the murder of his wife, mother-in-law, and father-in-law and the attempted murder of one of his daughters. He was acquitted of all charges. Following the criminal trial, the Douglas County Department of Human Services (DCHS) commenced proceedings to terminate father's parental rights pursuant to § 19-3-604(1)(b)(II), C.R.S.2003 (court may order termination of parental rights based on a single incident resulting in serious bodily injury of a child).
Before the termination hearing, father moved to disqualify the trial judge because he had presided over the criminal trial (first recusal motion). The court denied this motion.
After the termination hearing, in a detailed, thorough, and well-reasoned order, the court terminated father's parental rights, finding by clear and convincing evidence that he killed his wife, mother-in-law, and father-in-law and caused serious bodily injury to his daughter. Father appealed that judgment.
A wrongful death action arising out of the same incident was pending against father, and it was also assigned to the same trial judge. After the termination hearing, the trial judge sua sponte recused himself from presiding over that case.
While this appeal was pending, DCHS disclosed that one of its expert witnesses had testified falsely. Father was granted a limited remand to pursue a motion for relief from judgment under C.R.C.P. 60.
Father then moved to disqualify DCHS's attorneys from the C.R.C.P. 60 proceeding and also moved for recusal of the trial judge (second recusal motion). The trial court did not disqualify DCHS's attorneys, did not recuse itself, and denied father's motion for relief from judgment. This recertified appeal followed.

I.
Father first contends that the trial judge erred by failing to recuse himself from the termination hearing and the C.R.C.P. 60(b) motion. We disagree.
"In a civil case, the trial judge's decision whether to disqualify himself or herself is discretionary and will not be reversed unless an abuse of discretion is shown." Zoline v. Telluride Lodge Ass'n, 732 P.2d 635, 639 (Colo.1987). However, on appeal, a trial court's determination of the legal sufficiency of a motion and affidavit to disqualify is subject to an independent review. The test of the sufficiency of a motion to disqualify is whether the motion and required affidavit state facts from which it may reasonably be inferred that the judge harbors bias or prejudice that will prevent him or her from dealing fairly with the party seeking recusal. Moody v. Corsentino, 843 P.2d 1355 (Colo. 1993). If the motion and supporting affidavit merely allege opinions or conclusions that are unsubstantiated by facts supporting a reasonable inference of actual or apparent bias or prejudice, disqualification is not required. Holland v. Bd. of County Comm'rs, 883 P.2d 500 (Colo.App.1994).
Generally, a judge's ruling on a legal issue cannot form the basis for recusal. Brewster v. Dist. Court, 811 P.2d 812 (Colo. 1991). Also, a judge's opinion formed against a party from evidence before the court in a judicial proceeding, even as to the guilt or innocence of a defendant, is generally not a basis for disqualification. Walker v. People, 126 Colo. 135, 145, 248 P.2d 287, 293 (1952).

*448 A.
In the first recusal motion, father argued that disqualification was required because the trial judge presided over the criminal trial, made rulings there unfavorable to father, and appeared to believe during the trial that father committed the murders. Specifically, father points to two unfavorable rulings made by the trial judge: a finding of probable cause to bind over the criminal case for trial and a finding that the proof was evident and the presumption great that father had committed the charged murders.

1.
The trial judge denied the motion because, inter alia, it failed to assert "facts from which one could conclude that this court has some interest or prejudice in this case."
The motion failed to state facts from which it could be inferred that the trial judge was biased or prejudiced. It merely asserted that the trial judge had presided over father's criminal trial and made rulings in that case. It did not assert other facts from which bias or prejudice could be inferred.
Unfavorable rulings and a court's alleged personal opinion formed from the judicial proceeding are insufficient to establish bias. See Brewster v. Dist. Court, supra; Walker v. People, supra.
Father cites no case, and we are aware of none, holding that the mere fact that a judge presided over a related case involving the same party is a sufficient basis to disqualify that judge from a subsequent case. We have found cases, albeit not in Colorado, holding that a judge is not disqualified for presiding over an earlier unrelated case involving the same party. United States v. Frezzo, 563 F.Supp. 592 (E.D.Pa.1983), aff'd, 734 F.2d 8 (3d Cir.1984); State v. Webb, 238 Conn. 389, 680 A.2d 147, 186 (1996); People v. Peterson, 311 Ill.App.3d 38, 244 Ill.Dec. 206, 725 N.E.2d 1 (1999); State v. Parton, 817 S.W.2d 28 (Tenn.Crim.App.1991). We agree with the holdings in these cases and conclude that the mere fact that the trial judge presided over the earlier criminal case against father is not grounds for his disqualification here.
We reject father's contention that the trial judge was prejudiced by the evidence he heard in the criminal trial that would not have been presented in this case. What a judge learns in his or her judicial capacity usually cannot form the basis for disqualification. People v. Ramos, 708 P.2d 1347 (Colo. 1985). It is presumed that a trial judge disregards incompetent evidence. People v. Mascarenas, 181 Colo. 268, 509 P.2d 303 (1973). Without specific contrary evidence in the record, we presume that the trial judge here disregarded evidence inadmissible in this proceeding that he learned from the criminal proceedings.
As to the specific findings in the criminal case that father relies on here, we also conclude these are not a sufficient basis to require disqualification of the trial judge.
"[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994); see also Brewster v. Dist. Court, supra; People v. Ramos, supra; Walker v. People, supra.
Accordingly, we conclude that the trial judge did not abuse his discretion in finding that the facts asserted in the motion did not support an inference that he was biased or prejudiced against father.

2.
Further, even if the assertions in the motion had been sufficient, the motion had fatal procedural flaws.
Here, father did not include an affidavit with his first motion, as required by C.R.C.P. 97. Without an affidavit, the motion to recuse was legally insufficient. See Jones v. Estate of Lambourn, 159 Colo. 246, 411 P.2d 11 (1966)(appellate court refused to consider the issue where appellant did not comply with C.R.C.P. 97 in the trial court); Kubat v. Kubat, 124 Colo. 491, 238 P.2d 897 (1951)(the moving party must include an affidavit supporting the motion to disqualify).
Father argues that an affidavit was unnecessary because the facts were undisputed and known to the trial judge. Defendant did not raise this argument in the trial court *449 or in his opening brief. Because the argument is raised for the first time in his reply brief, we need not consider it. See People v. Hall, 59 P.3d 298 (Colo.App.2002).
Additionally, the motion was untimely. The first motion to recuse was filed shortly before the termination hearing and thirty-eight months after the dependency and neglect action was started, twenty-one months after father was acquitted in the criminal case, and fourteen months after the motion to terminate parental rights was filed. This lapse of time, while legal proceedings continued, supports the trial judge's finding of untimeliness. See Aaberg v. Dist. Court, 136 Colo. 525, 319 P.2d 491 (1958)(failure to file promptly a C.R.C.P. 97 motion when grounds are known may constitute waiver); Holland v. Bd. of County Comm'rs, supra (C.R.C.P. 97 motion filed one year after grounds were known was not filed promptly); Estate of Binford v. Gibson, 839 P.2d 508 (Colo.App.1992)(C.R.C.P. 97 motion filed two years after grounds were known was untimely).

B.
In his second recusal motion, father incorporated a C.R.C.P. 97 motion filed in the related wrongful death action, and asked the trial judge to recuse himself from the C.R.C.P. 60 proceedings. In his motion and affidavit, father cited several unfavorable rulings made by the court in the termination hearing and several statements in the court's termination order characterizing father as unbelievable. The trial judge found that all those statements were made in rulings during the prior proceedings. He concluded that rulings unfavorable to father were not sufficient grounds to justify his disqualification and denied the motion.
As stated above, opinions a judge formed from evidence in proceedings before the court are insufficient to require disqualification. Liteky v. United States, supra; Brewster v. Dist. Court, supra. Unfavorable rulings alone are also insufficient. See Walker v. People, supra,
Therefore, we conclude that the trial judge did not abuse his discretion in denying this motion on the grounds asserted.

1.
On appeal, father contends that the trial judge should have recused himself from the C.R.C.P. 60 proceeding because he recused himself sua sponte in the wrongful death action. We disagree.
The trial judge did not disqualify himself in the wrongful death action because he was biased or prejudiced against father. Rather, in the wrongful death action, the plaintiff moved for summary judgment based on factual findings in the trial judge's order terminating father's parental rights. The judge recused himself to avoid an appearance of bias because in the wrongful death case, the court would have had to rule on the sufficiency of his own factual findings in the termination hearing. Therefore, recusal in the wrongful death action did not mandate recusal in this case.

2.
Father also asserts that the trial court erred by failing to consider Canon 3 of the Code of Judicial Conduct in ruling on the recusal motion. We disagree.
As relevant here, Canon 3(C)(1)(a) of the Code of Judicial Conduct requires disqualification if a judge has "a personal bias or prejudice concerning a party." A judge must consider the judicial canons when deciding whether recusal is appropriate. Zoline v. Telluride Lodge Ass'n, supra, 732 P.2d at 639.
"Trial judges are presumed to know the law and to apply it in making their decisions." People v. White, 870 P.2d 424, 440 (Colo.1994)(quoting Walton v. Arizona, 497 U.S. 639, 653, 110 S.Ct. 3047, 3057, 111 L.Ed.2d 511 (1990)). Appellate courts do not indulge in presumptions of bias and do not assume a violation of the Code of Judicial Conduct. People v. Vecchio, 819 P.2d 533, 535 (Colo.App.1991).
The trial judge did not specifically state that he harbored no personal bias or prejudice *450 against father. However, in ruling on the motion, the trial judge stated that father presented no information that would lead the court "to believe that it cannot be fair" and that "no facts were presented from which one could conclude that this court has some interest or prejudice in this case." These statements demonstrate that the judge considered whether he was biased or prejudiced against father and concluded that he was not. We further presume the trial judge knew and applied the law, including Canon 3(C)(1)(a), in denying father's motion.
Accordingly, we conclude that the trial court properly denied father's second recusal motion.

II.
Father next contends the trial court erred in denying his request to depose DCHS's counsel in the C.R.C.P. 60(b) proceeding. Because DCHS's attorneys submitted affidavits concerning when they learned of the expert witness's false testimony, a contested fact in the C.R.C.P. 60 proceeding, father argues that he should have been permitted to depose them. We find no abuse of discretion.
Discovery rulings, even rulings limiting discovery, are within the discretion of the trial court and will not be disturbed absent an abuse of discretion. An abuse of discretion occurs only when the trial court's decision is manifestly arbitrary, unreasonable, or unfair. Keybank v. Mascarenas, 17 P.3d 209 (Colo.App.2000).
Here, the trial court did not allow depositions of the DCHS's attorneys, but permitted father to depose the expert and subpoena the expert's documents and records. The court also allowed both parties to file affidavits and briefs with attachments.
The trial court was entitled to rely on the attorneys as officers of the court. See Jones v. Dist. Court, 617 P.2d 803 (Colo.1980). In light of the absence of any showing that the attorneys had a personal interest in the outcome of the case, the extent of discovery provided on the matter at issue in the C.R.C.P. 60(b) motion, and the breadth of the trial court's discretion in discovery matters, we perceive no abuse of discretion in the trial court's denial of father's request to depose DCHS's attorneys.

III.
Father next contends the trial court erred by not disqualifying DCHS's counsel in the C.R.C.P. 60 proceeding pursuant to Rule 3.7 of the Colorado Rules of Professional Conduct (Colo. RPC 3.7). We disagree.
As discussed above, DCHS's attorneys submitted affidavits in the C.R.C.P. 60 proceeding. However, they did not testify at any hearing.
Colo. RPC 3.7(a) provides that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness." This rule has been interpreted to permit a lawyer who may be a necessary witness to continue to represent a client "in all litigation roles short of trial advocacy." Colorado Bar Ass'n Ethics Comm., Formal Op. 78 (revised 1997).
Other jurisdictions that have considered rules similar to Colo. RPC 3.7 have held that their rules did not apply to appeals, summary judgment motions, or pretrial or posttrial proceedings. United States v. Berger, 251 F.3d 894, 906 (10th Cir.2001)(rule substantially similar to Colo. RPC 3.7 does not apply to appeals); Carroll v. Town of University Park, 12 F.Supp.2d 475, 486 (D.Md. 1997)(rule substantially similar to Colo. RPC 3.7 does not bar counsel's affidavits attached to a summary judgment motion), aff'd, 155 F.3d 558 (4th Cir.1998); Columbo v. Puig, 745 So.2d 1106, 1107 (Fla.Dist.Ct.App. 1999)(rule substantially similar to Colo. RPC 3.7 does not encompass pretrial or posttrial proceedings).
The parties have cited no authority, and our research has revealed none, holding that Colo. RPC 3.7 or similar rules apply to posttrial proceedings.
Accordingly, we conclude Colo. RPC 3.7 did not require the disqualification of the attorneys in the C.R.C.P. 60(b) proceeding.
Further, any error by the trial court in considering the attorneys' affidavits was harmless because other evidence in the record *451 supported the trial court's ruling on the C.R.C.P. 60(b) motion. The trial court relied on the expert's deposition testimony to determine that the expert had been untruthful when she testified she had informed DCHS's counsel during trial that her testimony was incorrect. Based on this evidence, rather than the affidavits of DCHS's attorneys, the court found that no fraud had been perpetrated on the court by those attorneys. See Canton Oil Corp. v. Dist. Court, 731 P.2d 687, 694 (Colo.1987)(noting evidence supported trial court's C.R.C.P. 60(b) ruling even if affidavits of attorneys were disregarded).
Accordingly, we perceive no error in the trial court's refusal to disqualify DCHS's attorneys.

IV.
Finally, father contends that the trial court erred in denying his C.R.C.P. 60(b) motion for relief from judgment because DCHS committed a fraud upon the court by knowingly presenting untruthful testimony from an expert witness and because, without the tainted expert testimony, the remaining evidence did not support the judgment terminating his parental rights. We disagree.
C.R.C.P. 60(b) is intended to balance the conflicting principles that litigation must have finality and that justice must be done. It is meant to provide relief from judgment in extraordinary circumstances. State Farm Mut. Auto. Ins. Co. v. McMillan, 925 P.2d 785 (Colo.1996). The granting or denial of a C.R.C.P. 60 motion is within the discretion of the trial court, and we will not disturb the ruling absent an abuse of discretion. Lakeside Ventures, LLC v. Lakeside Dev. Co., 68 P.3d 516 (Colo.App.2002). We will not set aside a trial court's factual findings, including its determination of the credibility of witnesses, if competent evidence exists in the record. Kincaid v. Western Operating Co., 890 P.2d 249 (Colo.App. 1994).

A.
Father first argues, based on the testimony of the expert witness, that DCHS's attorneys knew during the trial that the expert witness had testified falsely and they failed to reveal this to the court. The trial court found to the contrary.
The court found the expert's deposition testimony unbelievable concerning when she had disclosed her error to DCHS's attorneys. For the following reasons, the trial court found that the expert was untruthful when she testified that she informed the attorneys during trial. First, the witness offered similar testimony in a trial in another jurisdiction that took place after her testimony here. The court found it illogical that the expert would have attempted to correct her testimony in this case and then again testify falsely in the subsequent case. Second, the expert did not take steps to document her claimed disclosure, did not notify her supervisor of the error, and did not seek guidance on how to correct her testimony until after problems arose in the other case. Third, the expert never requested an opportunity to correct the record in this case. The record supports the trial court's conclusion, and therefore, the court could properly conclude that DCHS's attorneys had not perpetrated a fraud on the court.

B.
Father next argues that if the admittedly inaccurate testimony of the expert is disregarded, no clear and convincing evidence remains to support the judgment terminating his parental rights, and thus, the trial court erred by denying his C.R.C.P. 60(b) motion. We are unpersuaded.
The trial court found, and the parties agree, that the expert had testified untruthfully in part of her testimony relating to a fact that supported the statistical relevance of her analytical findings. This error undermined her opinion that bullets from the victims' bodies came from the same source as bullets possessed by father.
However, the court also found that the expert's chemical analysis of the bullet lead from the victims' bodies and the bullets possessed by father was still credible. The expert testified that the chemical composition of one victim bullet was identical to five *452 bullets possessed by father, that a second victim bullet was identical to a second set of five bullets possessed by father, and that a third victim bullet was identical to yet a third set of five bullets possessed by father. The court found that this evidence was relevant and persuasive that father killed three victims and caused serious bodily injury to his daughter.
It is the province of the trial court sitting as the fact finder to determine the credibility of a witness and to determine the weight and probative effect of the testimony. Kincaid v. Western Operating Co., supra. The fact finder is entitled to reject part of a witness's testimony that it finds to be untruthful and still accept other parts that it finds to be credible. Gordon v. Benson, 925 P.2d 775 (Colo.1996).
We must accept the findings of the trier of fact unless they are so clearly erroneous as to find no support in the record. Page v. Clark, 197 Colo. 306, 592 P.2d 792 (1979).
Therefore, it was within the trial court's province to find that the remainder of the expert testimony had probative value after the untruthful part was disregarded. The probative value may have been reduced when the untruthful part was rejected, but the trial court was entitled to determine the weight of the remaining evidence. The finding of the trial court was based on evidence in the record and was not, as father argues, so illogical that it must be overturned.
The trial court also found that even if the expert's testimony was entirely disregarded, there was still clear and convincing evidence that father committed the murders. After examining the record, we agree.
When the sufficiency of the evidence is challenged on appeal, we must determine whether the evidence, viewed as a whole and in the light most favorable to the prevailing party, is sufficient to support the court's finding. If there is competent evidence to support the court's finding, we will not disturb it on appeal. See Robinson v. City & County of Denver, 30 P.3d 677 (Colo. App.2000). In a termination of parental rights trial, the sufficiency, probative effect, and weight of the evidence, as well as the inferences to be drawn from the evidence, are the province of the trial court. People in Interest of D.L.C., 70 P.3d 584 (Colo.App. 2003).
Circumstantial evidence enjoys the same status as direct evidence. People v. Bennett, 183 Colo. 125, 515 P.2d 466 (1973).
The following evidence in the record supports the trial court's conclusion. Father owned a gun that could have been used to commit the murders, and he had gunshot residue on his face and hat and blood on his pants.
Father also had severe financial troubles including over $100,000 in debt, and he was unable to close on a contract to purchase a new home. His wife was apparently unaware of this financial situation and inaccurately believed the family would earn millions of dollars from one of father's business projects. Father was the primary beneficiary under his wife's life insurance policies and stood to receive $500,000 in the event of his wife's death.
Just days before the murders, a suspicious gas leak occurred at the family's residence. At the time of the gas leak, the wife was home alone with one of the children. Evidence showed the gas line had been tampered with and that father was alone in the basement shortly before the gas leak occurred.
The night of the murders, a neighbor's surveillance video recorded sounds that an expert identified as gunshots. According to this expert in audio and video analysis, the gun shots occurred twelve to thirteen seconds apart. Two victims were found in an upstairs bedroom and two found in the basement. Father testified that to move in the dark between these two locations the murderer would have had to know where each victim slept. Father had been living at the house and testified that he was quite familiar with the house and that he could move quickly through the house in the dark. Further, the house showed no signs of a forced entry or burglary, and several items, including the *453 wife's engagement ring, were in plain view, but were left untouched.
Father worked in the oil and gas industry, and his business associate testified that a person's reputation for integrity and credibility was extremely important in that industry. Father once tried to change his identity in an attempt to leave his family, and shortly before the murders, his wife threatened to reveal this to his business associates.
Father told the police at the crime scene the night of the murders that "[His children] didn't see anything. They were asleep." This statement supports an inference that father had known his children were sleeping while the murders were committed because he was present at that time.
Based on this evidence in the record, we conclude that the trial court did not abuse its discretion in finding that evidence other than the tainted expert's testimony supported the judgment.
Accordingly, the judgment and order are affirmed.
Judge TAUBMAN and Judge CARPARELLI concur.
NOTES
[*] Justice BENDER does not participate.