Vernon TEMPLEMAN, Plaintiff–
Appellant,

v.

Frank GUNTER, Mr. Gasko, George Sulli-
van, Lou A. Hesse, Frank Miller, Mark
McKenna, Nolan Renfrow, Denise Neal,
Irving G. Jaquez, Ben Griego, and Cap-
tain K. Gregg, all in their official and
individual capacity, Defendants–Appel-
lees.

No. 93–1333.

United States Court of Appeals,
Tenth Circuit.

Feb. 2, 1994.

STEPHEN H. ANDERSON, Circuit Judge.

Vernon Templeman, a prisoner at Colorado's Centennial Correctional Facility, brought this civil rights action under 42 U.S.C. § 1983. Templeman claims that Colorado Department of Corrections ("DOC") officials denied him due process and equal protection of the laws when they regressively transferred him from general population to administrative segregation in October, 1992. The district court accepted the magistrate judge's recommendation that the complaint be dismissed, apparently under 28 U.S.C. § 1915(d). The magistrate judge concluded that Templeman has no liberty interest in his prison classification, prison employment, or continued earned time, good time, or sentence commutation credits. The magistrate judge also concluded that the DOC had followed required state procedures, and that Templeman's claims of bias and denial of equal protection were vague and conclusory. Although we follow different reasoning on several claims, we affirm the district court's dismissal of Templeman's complaint.

## BACKGROUND

According to Templeman, he was in administrative segregation for seven years, from 1984 until 1991, when he was transferred to maximum security/general population. Templeman received several benefits in general population that he did not receive while in administrative segregation, including earned time credits, good time credits, sentence commutation review credits, and a prison job. While in general population, Templeman received positive cellhouse evaluations, remained employed, and generally fulfilled the criteria for continued general population status.

In October, 1992, Centennial began transferring its general population inmates to other prisons or to administrative segregation. Templeman first appeared without notice before a special Warden's Classification Committee, which decided that he should be regressively transferred to administrative seg-

Submitted on the brief: *

Vernon Templeman, pro se.

Before MOORE, ANDERSON, and KELLY, Circuit Judges.

regation because of a history of escapes, extreme violence, recent code convictions for alcohol, and threats to kill the President.

Soon after the special committee hearing, Templeman received notice of an administrative segregation hearing. A single officer conducted the hearing, despite Templeman's request for a three-member panel. The hearing officer ordered that Templeman be transferred to administrative segregation, and the order was upheld in an administrative appeal.

## DISCUSSION

■ Section 1915(d) permitted the district court to dismiss Templeman's complaint if it was "frivolous." 28 U.S.C. § 1915(d). Plausible factual allegations are not frivolous under section 1915(d) even if they lack evidentiary support. *Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir.1991); *see also Shabazz v. Askins,* 980 F.2d 1333, 1335 (10th Cir.1992) (explaining that section 1915(d) dismissal is inappropriate if factual allegations are plausible). If the facts do not support an "arguable" claim, however, the court may dismiss the complaint. *McKinney v. Oklahoma,* 925 F.2d 363, 365 (10th Cir.1991); *see also Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 1833, 104 L.Ed.2d 338 (1989) (explaining that section 1915(d) permits dismissal if the claim is "based on an indisputably meritless legal theory"). We must affirm the district court's dismissal unless the court abused its discretion. *See Denton v. Hernandez,* — U.S. —, —, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

### I. Due Process

#### A. *Administrative Segregation*

■ The Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property. Changing an inmate's prison classification ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison. *See Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976) (explaining that the Due Process Clause does not protect a prisoner against transfer to another prison, even if more re-

strictive). However, Templeman argues that Colorado laws and regulations entitle him to remain in the general population unless he has met certain criteria, and therefore the state cannot deprive him of his liberty in the general population without giving him due process of law. *See Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 463, 109 S.Ct. 1904, 1910, 104 L.Ed.2d 506 (1989) (noting that explicit mandatory language in state law can create liberty interests); *Hewitt v. Helms,* 459 U.S. 460, 469–71, 103 S.Ct. 864, 870–71, 74 L.Ed.2d 675 (1983) (explaining that state statutes and regulations may create protected liberty interests if they substantively limit official discretion).

■ We disagree that Colorado laws and regulations entitle inmates to remain in the general population absent certain conduct. DOC Regulation 600–2 says that a transfer to administrative segregation "shall be ordered in the sound exercise of discretion by the classification officer or committee." DOC Reg. 600–2 ¶ 6(a)(1). The regulation does list several "incorrigibility factors" that the classification officer or committee may consider, but the list is not exhaustive and includes "[a]ny other reasons of similar magnitude deemed sufficient by the classification officer or committee." *Id.* ¶ 6(a)(1)(g). Templeman also cites a memo listing eight types of conduct that "could cause consideration for placement in administrative segregation." Appellant's Br. Ex. I. Like the regulation, the memo does not limit official discretion to consider other factors. The other regulations cited by Templeman, CCF 600–1 and CCF 650–1, do not specify any criteria for placing inmates in administrative segregation, but deal only with procedural requirements and refer to other regulations. We therefore conclude that Colorado has not given Templeman a liberty interest in his prison classification.

#### B. *Benefits Lost in Administrative Segregation*

##### 1. Earned Time

■ The DOC awarded Templeman earned time credits while he was in the general population, but the DOC's policy is that inmates in administrative segregation are in-

eligible for earned time credits. Templeman argues that state law requires awarding him earned time credits if he satisfies the statutory criteria. The earned time statute generally makes earned time credits discretionary. Colo.Rev.Stat. § 17–22.5–302(1) ("[E]arned time ... may be deducted from the inmate's sentence...."); *see also Renneke v. Kautzky,* 782 P.2d 343, 344–45 (Colo.1989) (en banc) (explaining that under current statutory scheme, expressed in section 17–22.5–302(4), that the DOC has broad discretion to award or withdraw earned time credits). However, Templeman points out that a subsection of the earned-time statute apparently makes awards of earned time mandatory in his case because he was sentenced for crimes that occurred between July 1, 1979, and July 1, 1985. *See* Colo.Rev.Stat. § 17–22.5–302(3) ("[T]he department shall review the performance record of the inmate and shall grant, consistent with the provisions of this section, an earned time deduction...."). Denying mandatory earned time credits would deprive Templeman of a liberty interest because the credits move forward his mandatory date of release on parole. *See Williamson v. Jordan,* 797 P.2d 744, 747–48 (Colo.1990) (en banc); *Bynum v. Kautzky,* 784 P.2d 735, 739 (Colo.1989) (en banc).

However, even the apparently mandatory subsection only requires an award of earned time credits if the inmate has met certain criteria. The DOC has reasonably concluded that inmates in administrative segregation do not meet those criteria, such as "substantial and consistent progress in ... [g]roup living, including housekeeping, personal hygiene, cooperation, social adjustment, and double bunking." *See* Colo.Rev.Stat. § 17–22.5–302(1)(b). As we have already explained, the DOC officials had discretion to put Templeman in administrative segregation. Once there, Templeman did not meet the criteria for receiving earned time. Therefore the defendants have not deprived Templeman of any earned time to which he was entitled.

### 2. Good Time

■ Templeman similarly complains that he has been denied good time credits by the move to administrative segregation. Unlike the earned time statute, the good time statute clearly makes good time awards to Templeman discretionary. The applicable section says that the DOC may withhold "good time earnable in subsequent periods of sentence, but not yet earned, for conduct occurring in a given period of sentence." Colo.Rev.Stat. § 17–22.5–301(4). Denying Templeman good time credits by moving him to administrative segregation therefore did not deny him any liberty interest.

### 3. Prison Work Assignment

■ Templeman also lost his prison job when he was transferred to administrative segregation. He does not identify any statute or regulation that entitles him to a prison job. Without such a statute, prisoners do not have a constitutional right to employment. *See Williams v. Meese,* 926 F.2d 994, 998 (10th Cir.1991); *Ingram v. Papalia,* 804 F.2d 595, 596–97 (10th Cir.1986). Depriving Templeman of his job by putting him in administrative segregation therefore did not deprive him of liberty or property.

### 4. Sentence Commutation

■ Finally, Templeman complains about losing statutory clemency credits while in administrative segregation. The governor has complete discretion to commute sentences. Colo.Rev.Stat. § 16–17–101. Furthermore, the regulation governing eligibility for consideration does not make sentence commutation credits mandatory. In fact, the regulation specifically states that inmates in administrative segregation are not eligible for consideration. DOC Reg. 150–2. Templeman therefore is not entitled to statutory clemency credits and was not deprived of any liberty interest by being denied the opportunity to earn those credits while in administrative segregation.

### C. *Procedural Requirements*

Templeman complains that the prison administrators violated several procedural requirements in the process of assigning him to administrative segregation. He claims that the defendants gave him no notice of an initial hearing before a special classification committee, that the notice of a subsequent

hearing did not specify the grounds for administrative segregation as required by regulation, that a single officer rather than the required three-member panel conducted his administrative segregation hearing, and that his classification officer was not impartial.

 Since Templeman was not deprived of any liberty to which he was entitled, no particular process was constitutionally due or required, regardless of state law. Nor does denying process, however mandatory under state law, itself deny liberty. *See Olim v. Wakinekona,* 461 U.S. 238, 250, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."); *Doyle v. Oklahoma Bar Ass'n,* 998 F.2d 1559, 1570 (10th Cir.1993). Because Templeman had no liberty interest in remaining in the general population, the Constitution did not require any particular process at all, even if state law did.

## II. Equal Protection

Templeman claims that he was not treated the same as similarly situated inmates when he was transferred to administrative segregation. The magistrate judge rejected this equal protection claim because Templeman had offered only "conclusory allegations, unsupported by allegations of fact." Recommendation at 10; *see also Cotner v. Hopkins,* 795 F.2d 900, 902 (10th Cir.1986) (per curiam); *Wise v. Bravo,* 666 F.2d 1328, 1332–33 (10th Cir.1981). In his objections to the magistrate's recommendations, however, Templeman offered many examples and affidavits of other inmates with similar records who were progressively transferred rather than regressively transferred.

Nevertheless, we affirm the district court's dismissal of Templeman's equal protection claim because Templeman could not possibly prevail on the alleged facts. He does not claim that the defendants treated him differently because of any suspect classification. He therefore must prove that the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose. *See Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."); *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).

 As we explained above, classification decisions are discretionary. Even though the regulations offer a list of criteria to consider, DOC officials must weigh the various criteria and whatever else seems relevant in making the qualitative judgment how to classify an individual inmate. Despite Templeman's allegations, it is "clearly baseless" to claim that there are other inmates who are similar in every relevant respect. *Neitzke,* 490 U.S. at 327, 109 S.Ct. at 1833. Not only might the DOC classify inmates differently because of slight differences in their histories, but they also might classify inmates differently because some still seem to present more risk of future misconduct than others. Templeman's claim that there are no relevant differences between him and other inmates that reasonably might account for their different treatment is not plausible or arguable.

We therefore AFFIRM the district court's dismissal of Templeman's complaint.