45 F.3d 440
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Ronald Lee RHODES, Plaintiff-Appellant,
v.
Stanley KNIGHT, Lt. G. Brown, Carl Baker, Carolyn Beyers,
Anthony Perez, D.V. Hendry, Glenn Lee, Dale
Sturgeon, M.R. Lemen, and Gene Sterns,
Defendants-Appellees.
 No. 94-3279.
 United States Court of Appeals, Tenth Circuit.
 Dec. 20, 1994.
 
 Before SEYMOUR, Chief Judge, McKAY and BALDOCK, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Mr. Rhodes, an inmate at the Hutchinson Correctional Facility in Kansas, appeals the grant of summary judgment entered against him by the district court. Mr. Rhodes had brought three civil rights claims under 42 U.S.C.1983 against various Hutchinson personnel. We affirm.[2]
 
 
 3
 Viewing the evidence in the light most favorable to Mr. Rhodes,[3] it appears that Hutchinson officials, in preparation for his expected transfer to another facility, ordered Mr. Rhodes in September 1990 to divest himself of his legal files and materials. Acquiescing to this order, Mr. Rhodes mailed his legal materials to his grandmother for safekeeping. In December 1989, Mr. Rhodes was transferred; he promptly, and successfully, requested permission to have his legal research returned to him. Before this could be accomplished, however, Mr. Rhodes was returned to Hutchinson in January 1990. Once more, he asked permission to have his legal materials shipped to him, and, again, permission was given. Mr. Rhodes's grandmother faithfully entrusted a package of legal materials to the care of the Postal Service, but, for reasons unknown, the package was returned to her. The record does not indicate that a second attempt to ship the materials to Mr. Rhodes was made, and he apparently never received them.
 
 
 4
 Construing his complaint liberally, Mr. Rhodes alleges two violations of his constitutional right of access to the courts. First, Mr. Rhodes contends that Hutchinson personnel, in compelling him to mail his legal materials to his grandmother's home, impermissibly interfered with his ability to pursue a then-pending civil appeal. Second, Mr. Rhodes alleges that Hutchinson officials refused to accept the package of legal materials shipped to him by his grandmother and thereby denied him meaningful access to the courts.
 
 
 5
 We note that Mr. Rhodes does not allege that the Kansas prison system failed generally to provide adequate access to legal materials. Rather, Mr. Rhodes's complaint turns on his ability, or lack thereof, to access this particular set of research materials without undue delay or convenience. We have previously recognized that affirmative deprivation of access to particular legal materials states a valid claim under 42 U.S.C.1983 even where prison officials otherwise provide adequate access to legal materials. See Green v. Johnson, 977 F.2d 1383, 1389 (10th Cir. 1992) ("[P]rison officials may not affirmatively hinder a prisoner's efforts to construct a nonfrivolous appeal or claim."); see also Morello v. James, 810 F.2d 344 (2d Cir.1987) (intentional destruction of particular legal materials gives rise to cause of action); Jackson v. Procunier, 789 F.2d 307 (5th Cir.1986) (intentional delay in delivering legal materials to prisoner gives rise to cause of action). Insofar as he contends that Hutchinson personnel affirmatively denied him access to legal materials crucial to prosecution of his civil appeal,[4] Mr. Rhodes has therefore alleged sufficient cause to claim a constitutional violation.
 
 
 6
 To withstand summary judgment, however, Mr. Rhodes must also set forth specific facts that demonstrate the existence of genuine issues for trial. This Mr. Rhodes has failed to do. Mr. Rhodes has proffered no evidence to support his allegation that Hutchinson personnel refused to accept delivery of his legal materials in January 1990. To the contrary, the documents submitted by Mr. Rhodes indicate that Hutchinson officials never refused to grant him permission to receive his legal materials. More significantly, the contemporaneous letters sent to Mr. Rhodes by his grandmother suggest that the package may have been mislabeled. In short, nothing in the record supports any conclusion other than that the legal materials were returned to Mr. Rhodes's grandmother because of some unknown mishap at the prison postal office or on the part of the Postal Service. "Such an isolated incident, without any evidence of improper motive or resulting interference with ... access to the courts, does not give rise to a constitutional violation." Smith v. Maschner, 899 F.2d 940, 944 (10th Cir.1990).
 
 
 7
 Having failed to substantiate his allegations that Hutchinson officials affirmatively prevented him from receiving his legal materials, Mr. Rhodes cannot claim a total deprivation of legal materials. He may still claim a limited deprivation of access resulting from his temporary inability to use the legal materials shipped to his grandmother. Compare Jackson, 789 F.2d 307. To state a valid claim of limited deprivation of access, however, Mr. Rhodes must identify both cause and some prejudice that followed from the alleged deprivation of legal materials. See Ruark v. Solano, 928 F.2d 947, 950 (10th Cir.1991). Mr. Rhodes does not deny that he had access to alternative sources of legal advice and knowledge. Nothing other than Mr. Rhodes's bare allegations supports his assertion that his appeal was dismissed because he was unable to use these materials from September to January. We note, moreover, that an inventory of his possessions made in January 1990 reveals that he then possessed certain legal documents. We cannot conclude that Mr. Rhodes has demonstrated sufficient prejudice to escape summary judgment. We therefore affirm the district court's grant of summary judgment with respect to Mr. Rhodes's claims of deprivation of access to the courts.
 
 
 8
 Mr. Rhodes next claims that he was improperly confined to administrative segregation on June 22, 1990. Administrative segregation, as defined in Kansas Administrative Regulation 44-14-301, is a non-punitive status designed to maintain order in the prison setting. Mr. Rhodes was placed in administrative segregation pursuant to 44-14-302(g), which empowers the prison administrator to confine an inmate to administrative segregation for "engaging in behavior which threatens the maintenance of security or control in the [prison]." Kan. Admin. Reg. 44-14-302(g). Prison records submitted by the Defendants indicate that Mr. Rhodes was placed in administrative segregation following insubordinate behavior. Mr. Rhodes offers nothing more than his bare pleadings to refute this explanation. The district court therefore concluded that the Defendants had demonstrated sufficient cause to support the actions taken. In light of the discretionary authority vested in prison officials under 44-14-302(g), we agree. See Templeman v. Gunter, 16 F.3d 367 (10th Cir.1994) (state law accords prison officials broad discretion to place inmates in administrative segregation).
 
 
 9
 Lastly, Mr. Rhodes contends that Hutchinson officials improperly removed him from his position with the prison food service because of his race. The Constitution itself does not create a property or liberty interest in prison employment, see Ingram v. Papalia, 804 F.2d 595, 596 (10th Cir.1986), nor does such an interest arise from Kansas law, see Turner v. Maschner, 715 P.2d 425, 427 (Kan.1986). Mr. Rhodes, moreover, has done nothing more than allege that his removal was the product of racial discrimination. We agree with the district court that such allegations are insufficient to withstand summary judgment.
 
 
 10
 Mr. Rhodes disputes the propriety of the district court's decision to grant summary judgment before allowing Mr. Rhodes to initiate discovery proceedings. The Defendants here have set forth a potentially valid claim of qualified immunity. Discovery is necessarily limited in such a case. We note, furthermore, that Mr. Rhodes filed his own motion for summary judgment, in which he submitted that no genuine issue of material fact remained in dispute.
 
 
 11
 We therefore AFFIRM the decision of the district court.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 We grant Mr. Rhodes's petition for leave to proceed in forma pauperis
 
 
 [3]
 The district court concluded that Mr. Rhodes had failed to produce any evidence to substantiate his claim that prison officials forced him to mail his legal materials and research home. We do not agree. It is true that the prison's records do not contain any indication that Mr. Rhodes mailed anything home during the interval in question. However, Mr. Rhodes submitted copies of three prison requests (dated 10/2/89, 12/22/89, and 1/22/90, respectively) in which he inquired specifically about the legal materials allegedly sent to his grandmother's home. We note that the response to the 10/2/89 request, viewed in the light most favorable to Mr. Rhodes, suggests that prison officials failed to record the shipment of legal materials. Mr. Rhodes also submitted copies of contemporaneous letters written to him by his grandmother that acknowledge her attempts to mail legal files to him in January 1990. Thus, the district court erred to the extent that it found that Mr. Rhodes had failed to set forth specific facts showing the presence of a genuine issue for trial. We nonetheless agree with its determination for the reasons given above
 
 
 [4]
 We note that Mr. Rhodes avers that he was forced to relinquish both the record of his civil case and a copy of this circuit's appellate procedures and rules--two documents without which his efforts on appeal could hardly be considered "meaningful."