896 F.Supp. 1043 (1995)
John R. HALL, Plaintiff,
v.
Ben GRIEGO, Larry Embry, Jill A. Nielson, Jerry Awmiller, Mark McKenna, Nard Claar, Defendants.
Civ. A. No. 94-K-1670.
United States District Court, D. Colorado.
August 10, 1995.
*1044 *1045 John R. Hall, Canon City, CO, pro se.
Simon P. Lipstein, Assistant Attorney General, Denver, CO, for defendants.

MEMORANDUM OPINION AND ORDER
KANE, Senior District Judge.
Pro se plaintiff John R. Hall initiated this 42 U.S.C. § 1983 action against defendant prison officials alleging they violated his rights under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb et seq., and the First Amendment to the United States Constitution. Hall, who is serving a sentence in the Colorado State Penitentiary, claims defendants retaliated against him based on his race and protected religious activity. He seeks declaratory and injunctive relief, as well as monetary damages.
This matter was referred to a Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(b) and D.C.COLO.LR 72.4. Defendants moved for summary judgment. Hall responded, and sought leave to amend his complaint to assert additional claims. In a recommendation dated April 6, 1995, the Magistrate Judge granted Hall leave to amend, and denied defendants' motion on all but one of Hall's five claims for relief. Defendants filed a timely objection, and the matter is fully briefed and ripe for determination.
Pursuant to Fed.R.Civ.P. 72(b), I must review de novo those proposed findings of the Magistrate Judge to which objection is made. After considering the parties' briefs, the record, and the applicable caselaw, I adopt the Magistrate's Recommendation in part and reject it in part.

I. Background

John R. Hall is an inmate in the custody of the Colorado Department of Corrections (DOC). He has been in custody for the entire period of time relevant to this action. Hall alleges that he was transferred between various DOC facilities as punishment for his race, the practice of his religion and in violation of his due process rights. He also alleges that false information exists in his file in the form of confidential information.
Hall is an active member of the Nation of Islam. He served as the minister of the Nation of Islam at Limon Correctional Facility (LCF) for 18 months. On or about December 31, 1992, Hall was transferred from LCF to Buena Vista Correctional Facility (BVCF). The transfer from LCF to BVCF was a "progressive" transfer, i.e., it was based on an improvement in Hall's custody rating from close security to medium security that was scored in November 1992.
In July 1993, Hall was transferred from BVCF to temporary placement at Colorado Territorial Correctional Facility (CTCF) for six weeks, then to Fremont Correctional Facility (FCF). FCF is also a medium security facility. Defendants contend Hall was transferred from BVCF to FCF for his participation in efforts to implement a work stoppage at BVCF. Hall denies this contention. Hall claims that on or about June 6, 1993, before his transfer to FCF, he was strip searched and immediately afterwards temporarily assigned to Colorado Territorial Correctional Facility for six weeks. Hall alleges that he was a maximum security prisoner consigned to the conditions of maximum security during these six weeks.
In March 1994, Hall was transferred from FCF to CTCF. Defendants contend Hall was transferred from FCF to CTCF because confidential information established he was trying to organize facility disruption. Hall also denies this contention. Hall claims that he was transferred about one week after delivering a religious speech to approximately 75 inmates. As a result of the transfer Hall lost his job with Colorado Correctional Industry at $120.00 per month and now works for $16.00 per month.
In an administrative segregation hearing in June 1994, Hall was reclassified to maximum security. Defendants assert Hall was *1046 reclassified because of his disciplinary convictions and disruptive behavior while at LCF, his attempted work stoppage at BVCF, and his convictions for refusal to work and advocating facility disruption at CTCF. Hall denies any charges of disruptive behavior and argues that the LCF disciplinary convictions relate to his refusal to remove his religious headgear. He also maintains that false information exists in his inmate file.

II. Standard of Review

I am required under the standard of review set forth in Fed.R.Civ.P. 72(b) to make a de novo determination of those portions of the Magistrate's proposed findings or recommendations to which objection is made. As Hall is proceeding pro se, I must construe his complaint and other filings liberally. Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir.1979). "The Tenth Circuit has considered this to mean that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.1991). "However, conclusory allegations of constitutional violations, unsupported by allegations of fact, do not state a claim on which relief can be granted." Cotner v. Hopkins, 795 F.2d 900, 902 (10th Cir.1986).

III. Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c), applied in Hagelin for President Committee v. Graves, 25 F.3d 956, 959 (10th Cir.1994). In applying this standard, I must construe the factual record and draw reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Blue Circle Cement, Inc. v. Board of County Comm'rs, 27 F.3d 1499, 1503 (10th Cir.1994).
The moving party carries the burden of showing beyond a reasonable doubt that it is entitled to judgment. Baker v. Board of Regents, 991 F.2d 628, 630 (10th Cir.1993). Once the moving party shows it is entitled to summary judgment, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof. Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir.1993), cert. denied, ___ U.S. ____, 114 S.Ct. 1075, 127 L.Ed.2d 392 (1994). The nonmoving party may not rest upon mere allegations or denials, but must set forth specific facts showing a genuine issue for trial, relying on the types of evidentiary materials contemplated by Rule 56. John Hancock Mut. Life Ins. Co. v. Weisman, 27 F.3d 500, 503 (10th Cir.1994) (applying Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). The relevant inquiry is whether the evidence presents a "sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2511-12, 91 L.Ed.2d 202 (1986).

IV. Merits

The Magistrate Judge granted defendants' motion for summary judgment as to Hall's claim that his transfer from LCF to BVCF was in retaliation for his race and religion. No objections were made. The Magistrate Judge denied defendants' motion as to each of Hall's four remaining claims: (1) that his transfer from BVCF to FCF was in retaliation for his race and the practice of his religion, (2) that his transfer from FCF to CTCF was in retaliation for his race and the practice of his religion, (3) that his reclassification to maximum security in an administrative segregation hearing in June 1994 constitutes religious retaliation, and (4) that false information exists in his inmate file.
Defendants raise three objections to the Magistrate's recommendations. First, they contend Hall failed to plead circumstances that would bring this action within the scope of the RFRA. Alternatively, if the RFRA *1047 does apply, defendants maintain they are entitled to qualified immunity. Second, relying on Frazier v. Dubois, 922 F.2d 560 (10th Cir.1990), defendants contend prison transfers must be punitive in order to be retaliatory, and assert Hall's transfers from BVCF to FCF and from FCF to CTCF were not punitive. Defendants argue that since Hall was transferred laterally, from medium security to other medium security facilities, the transfers could not have been retaliatory. Third, defendants assert the claim for relief from administrative segregation Hall added when he amended his complaint should be dismissed for failure to state a claim upon which relief can be granted.
Hall maintains the facts of this case support application of the RFRA. He asserts his transfers and his placement in administrative segregation were punitive and thus in retaliation for his race and religion. Hall does not address the issue of qualified immunity.

A. The Religious Freedom Restoration Act

The RFRA's passage in 1993 legislatively overturned a number of Supreme Court decisions by defining a federally protected right to the free exercise of religion. The Tenth Circuit recently addressed the history and impact of the RFRA in Werner v. McCotter, 49 F.3d 1476 (10th Cir.1995). In Werner, the Tenth Circuit explained that the RFRA establishes the compelling interest test as the analytical framework governing "'all cases where free exercise of religion is substantially burdened.'" Id. at 1480 (quoting from 42 U.S.C. § 2000bb(b)(1)).
The RFRA provides:
(a) In general
Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.
(b) exception
Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person(1) is in furtherance of a compelling governmental interest; and
(2) is the least restrictive means of furthering that compelling governmental interest.
Applying this language in the prison context, the Tenth Circuit held that:
constraints upon religious conduct will not fall within the ambit of the [RFRA] unless a `substantial burden' is placed upon a prisoner's capacity to exercise or express his or her sincerely held beliefs or faith. To exceed the `substantial burden' threshold, government regulation must significantly inhibit or constrain conduct or expression that manifests some central tenet of a prisoner's individual beliefs, must meaningfully curtail a prisoner's ability to express adherence to his or her faith; or must deny a prisoner reasonable opportunities to engage in those activities that are fundamental to a prisoner's religion.
Id., at 1480.
I find Hall's allegations sufficient to state a claim under the RFRA in at least two ways. First, Hall asserts he was prohibited from wearing his religious headgear, which may be viewed as a constraint on expression. Second, Hall contends he was transferred after conducting religious services, creating an inference that Hall wrongfully was prohibited from doing so. Under Werner, Hall has stated a claim that he has been denied a "reasonable opportunity to engage in those activities that are fundamental to a prisoner's religion." Id., 49 F.3d at 1480.
Defendants contend they are entitled nevertheless to summary judgment on any such claim because their reasons for transferring Hall meet the RFRA's compelling interest test. Defendants assert Hall was transferred in one instance for attempting to organize a work stoppage and in another instance because confidential information suggested Hall posed a harm to staff and other inmates.
Under the RFRA, "the government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means *1048 of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). In Werner, the Tenth Circuit held that:
[C]ourts should continue to give `due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of courts and limited resources.' S.Rep. No. 111, at 1900. Nonetheless, even within the prison context, `the state must do more than simply offer conclusory statements that a limitation on religious freedom is required for security, health, or safety in order to establish that its interests are of the highest order.'
49 F.3d at 1479-80 (quoting Weaver v. Jago, 675 F.2d 116, 119 (6th Cir.1992)).
Hall asserts in opposition to defendants' motion for summary judgment that defendants fail to meet the criteria of the compelling interest test. Hall states defendants' factual contentions regarding his attempted work stoppage and danger to other inmates are made in a conclusory manner and are not substantiated. Moreover, Hall argues, defendants have failed to establish they used the least restrictive means of addressing these concerns. I agree and conclude defendants are not entitled to summary judgment under the RFRA's compelling interest test.

B. Retaliatory Transfer

The Tenth Circuit first considered the question of retaliatory prison transfers in Frazier v. Dubois, 922 F.2d 560 (1990). In Frazier the court adopted the Eighth Circuit's reasoning in Murphy v. Missouri DOC, 769 F.2d 502 (1985) agreeing that:
`While a prisoner enjoys no constitutional right to remain in a particular institution and generally is not entitled to due process protections prior to such a transfer, prison officials do not have the discretion to punish an inmate for exercising his first amendment rights by transferring him to a different institution.'
Frazier, 922 F.2d at 561-62 (quoting Murphy, 769 F.2d at 503.)
Defendants emphasize that a retaliatory transfer must involve an aspect of punishment. They rely on Hudson v. Johnson, 619 F.Supp. 1539, 1544 (E.D.Mich.1985) to argue that an inmate must be subjected to "more burdensome conditions" before a transfer can be deemed punitive. They also point out that in Murphy, plaintiff was transferred from a medium security facility to a maximum security facility. Defendants contend that Hall's transfers from BVCF and FCF respectively, were lateral (i.e., between correctional facilities of the same security level, in the same state) and thus not punitive. Defendants urge a narrow interpretation of Murphy, requiring the "different institution" to which an inmate is transferred be a greater security facility. I find no suggestion in Murphy that the definition of "punitive" be so narrowly defined, and conclude defendants' reading of the case goes beyond the language of its holding.
There are many ways in which a transfer to a same security facility might nonetheless be punitive. If the second facility offers fewer or inferior opportunities for religious practice, for example, the transfer to that facility may be punitive. Moreover, Hall's allegation that he was consigned to maximum security during his temporary six week assignment at CTCF satisfies even defendants' narrow definition of what constitutes a punitive or retaliatory transfer.
There exist genuine issues of material fact as to whether Hall's transfers from BVCF to FCF and from FCF to CTCF were retaliatory and in violation of Hall's rights under the RFRA. These issues preclude entry of summary judgment in favor of defendants on Hall's second and third claims for relief.

C. Administrative Segregation Hearing

Hall's security reclassification at the June 1994 administrative segregation hearing was the direct result of defendants' allegations regarding his attempted work stoppage and Hall's danger to other inmates. Like the transfers also prompted by these allegations, Hall asserts the reclassification was retaliatory and deprived him of his rights under the RFRA. As set forth above, I do not read the RFRA, Werner, or Murphy to limit retaliatory conduct to transfers from one prison facility to another. Thus, I find *1049 Hall's claim that his reclassification constitutes religious retaliation is also subject to the RFRA, and find there are genuine issues of material fact with respect to this claim that preclude entry of summary judgment in favor of defendants.

D. Qualified Immunity

Defendants argue that even if Hall's RFRA claims survive summary judgment on their merits, defendants are immune from suit under the doctrine of qualified immunity. Qualified immunity shields defendants from pecuniary liability unless they can be said to have violated "`clearly established' constitutional or statutory norms." Werner, 49 F.3d at 1481 (citing Anderson v. Creighton, 483 U.S. 635, 639-40, 107 S.Ct. 3034, 3038-39, 97 L.Ed.2d 523 (1987)); see Harlow v. Fitzgerald, 457 U.S. 800 (1982). While the Werner court held that the RFRA was to apply retroactively, on the question of qualified immunity it held that plaintiff continued to "bear[] the burden of proving that the law was clearly established at the time of the alleged violations." Werner, 49 F.3d at 1481.
In Anderson, the U.S. Supreme Court addressed the issue of what is clearly established law for the purpose of qualified immunity, stating:
the right the official is alleged to have violated must have been `clearly established' in a more particularized, and hence a more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent.
Anderson, 483 U.S. at 640, 107 S.Ct. at 3039. The Tenth Circuit has held that "for a right to be `particularized,' there must ordinarily be a Supreme Court or Tenth Circuit decision on point, or `clearly established weight of authority' from other courts." Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir.1995) (citing Medina v. City & County of Denver, 960 F.2d 1493, 1498 (10th Cir.1992)). Applying this analysis here, it must be ascertained whether the wrongfulness of the defendants' conduct under the RFRA was clearly established at the time of the alleged violations.
The RFRA was adopted November 16, 1993. Plaintiff Hall was transferred from BVCF to temporary placement at CTCF for six weeks, then to FCF in July 1993. Hall was transferred from FCF to CTCF in March 1994. He was reclassified to a higher security risk in June 1994. The 1993 transfer occurred before the RFRA was enacted and defendants "cannot therefore be held personally liable for constitutional or statutory violations created by this change in the law." Werner, 49 F.3d at 1481-82.
The 1994 transfer, as well as the reclassification, took place after enactment of the RFRA. At that time, however, there were no Supreme Court or Tenth Circuit decisions defining the contours of prisoners' rights under the RFRA, nor was there clearly established weight of authority from other courts that could be said to have put defendants on notice regarding the wrongfulness of their conduct. Under these circumstances, defendants are shielded from pecuniary liability under the doctrine of qualified immunity. Summary judgment shall therefore enter in favor of defendants and against Hall on his claim for monetary damages.

E. False Information In Hall's Inmate File

Hall contends defendants have placed false information in his inmate file, which defendants deny. The truth or falsity of Hall's contention cannot be determined at this time, which precludes entry of summary judgment.

F. Amended Complaint

As part of his Recommendation in this case, the Magistrate Judge permitted Hall to amend his complaint to add a claim that he was reclassified to maximum security without due process of law. See Pl.'s Am. Compl. ¶ 83. Defendants assert Hall's claim should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) because Colorado Department of Corrections Regulation AR 600-2, pursuant to which the administrative segregation hearing *1050 was conducted, creates no liberty interest protected by the Constitution's Due Process Clause. Defs.' Objections to Recommendation at 9 (citing Templeman v. Gunter, et al., 16 F.3d 367, 369 (10th Cir.1994)).
The Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property. In Templeman, the Tenth Circuit explained that changing an inmate's prison classification ordinarily does not deprive him of liberty because he is not entitled to a particular degree of liberty in prison. Id. at 369. Similarly, constitutional due process protections are not triggered when an inmate is transferred to another prison facility, even if more restrictive. Meachum v. Fano, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). Hall's avenue of redress in this case is limited to equitable relief under the statutory protections afforded by the RFRA. Hall's due process claims are dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6).

V. Conclusion

Because there was no objection, the Magistrate's recommendation that summary judgment be granted as to Hall's claims arising out of his transfer from LCF to BVCF is ADOPTED and entered as an order of this court. The Magistrate's recommendation that Hall's motion to supplement his complaint be granted and that the supplemental complaint be accepted for filing is also ADOPTED.
In addition, I make the following findings based on my de novo review of the issues raised in Defendants' Objections to the Recommendation of the Magistrate Judge:
1. The RFRA applies to Hall's claims that his transfers from BVCF to FCF and from FCF to CTCF, as well as his administrative reclassification to a higher security risk, were in retaliation for his religious beliefs.
a. Plaintiff has raised genuine issues of material fact as to whether these actions furthered a compelling interest or were the least restrictive means available for addressing that interest.
b. Plaintiff's recovery under the RFRA is limited to equitable relief. Defendants are shielded from pecuniary liability under the doctrine of qualified immunity. With that caveat, defendants' Motion for Summary Judgment with respect to plaintiffs RFRA claims is DENIED.
2. There are genuine issues of material fact as to whether false information exists in Hall's inmate file. Accordingly, defendants' Motion for Summary Judgment with respect to this claim is DENIED.
3. Neither a transfer to a different facility nor a change in an inmate's security classification triggers due process rights under the United States Constitution. Accordingly, defendants' motion to dismiss plaintiffs claims based on such a theory of relief is GRANTED.
This matter is remanded to the Magistrate Judge for further proceedings in accordance with the order entered by Judge Matsch on November 29, 1994.