FILED
United States Court of Appeals
Tenth Circuit

February 9, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

FREDERICK D. DEBERRY,

              Plaintiff-Appellant,

v.

BLAKE R. DAVIS; J. FOX; D.
SPROUL,

              Defendants-Appellees.

No. 11-1152
(D.C. No. 1:10-CV-00725-CMA-BNB)
(D. Colo.)

---

**ORDER**[*]

---

Before **KELLY, HARTZ,** and **HOLMES**, Circuit Judges.

---

Frederick Deberry is currently incarcerated at the United States

Penitentiary-Administrative Maximum in Florence, Colorado, commonly known

as "Florence ADX" or simply "ADX." Proceeding pro se,[1] he appeals from the

---

[*]      This Order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

After examining the appellate record, this three-judge panel determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[1]      Because Mr. Deberry is proceeding pro se, we construe his filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Van*

(continued...)

district court's order dismissing his due-process and equal-protection claims against Federal Bureau of Prison ("BOP") employees Blake Davis, J. Fox, and D. Sproul (collectively, "defendants"). We dismiss as moot Mr. Deberry's claims insofar as he seeks equitable relief. As for his claims for damages based upon the purported constitutional violations, we conclude that Mr. Deberry's appeal is frivolous. Accordingly, we deny Mr. Deberry's motion to proceed *in forma pauperis* on appeal and dismiss his appeal pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

## I. BACKGROUND

ADX has a stratified system of housing inmates known as the "step-down program." If an inmate meets certain criteria, he is eligible to be removed from the general prison population ("General Population") and to progress through various "units" that feature decreasing levels of restriction: Intermediate (J-Unit), Transitional (K-Unit), and Pre-Transfer (D/B Unit). An inmate who successfully progresses through the Pre-Transfer Unit may be transferred out of ADX to another, less restrictive BOP facility.

In March 2009, while housed in the Pre-Transfer Unit, Mr. Deberry was involved in a physical altercation with another prisoner. Pending resolution of his disciplinary charges, he was removed from the Pre-Transfer Unit and placed back

---

[1](...continued)
*Deelen v. Johnson*, 497 F.3d 1151, 1153 n.1 (10th Cir. 2007).

2

in General Population.  Mr. Deberry admitted to being involved in the altercation but insisted that he acted in self-defense.  In April 2009, a Disciplinary Hearing Officer ("DHO") found him guilty of "Disruptive Conduct," but on appeal, the Regional Director determined that there had been a procedural error in the disciplinary proceeding and remanded the matter to the DHO.  On rehearing, the DHO set aside his previous finding of guilt and expunged the incident report against Mr. Deberry.

Mr. Deberry then asked to be moved back into the step-down program (specifically, into the Pre-Transfer Unit) and to be given credit for time spent in General Population.  His request was denied.  In a memorandum, Mr. Deberry's unit manager, Mr. Sproul, acknowledged that the incident report had been expunged but nevertheless recommended that Mr. Deberry remain in General Population for at least a year before being placed back in the step-down program.  Mr. Fox, the associate warden at ADX, summarily approved the recommendation.

In November 2009, Mr. Deberry was placed back in the step-down program.  However, he was not immediately restored to his previous status in the Pre-Transfer Unit.  Rather, at that time, he was placed in the Intermediate Unit.

In March 2010, Mr. Deberry filed the present lawsuit, claiming violations of due process, equal protection, and double jeopardy, and seeking declaratory, injunctive, and monetary relief.  The defendants filed a motion to dismiss, and the magistrate judge, in a thoughtful and reasoned opinion, recommended granting it.

3

The district court issued its own opinion with respect to Mr. Deberry's claims, adopting and affirming the magistrate judge's recommendation, and dismissing Mr. Deberry's claims with prejudice. It also denied his request for a temporary restraining order or a preliminary injunction as moot. Mr. Deberry filed a timely notice of appeal in April 2011. The district court denied Mr. Deberry leave to proceed on appeal *in forma pauperis*, finding that "[his] appeal is not taken in good faith because [Mr. Deberry] has not shown the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal." R., Vol. 1, at 416 (Order Denying Leave to Proceed on Appeal Pursuant to 28 U.S.C. § 1915 and Fed. R. App. P. 24, dated May 6, 2011).

Months later, in August 2011, the defendants notified us that Mr. Deberry has since been transferred back into General Population due to an incident that occurred on March 27, 2011, in which Mr. Deberry allegedly directed abusive behavior toward a BOP staff member.[2] The defendants state that this transfer is "separate and independent of the instant case" because it is "based . . . on new, distinct facts." Notice, at 1–2, filed Aug. 19, 2011.

---

[2] By that time, it appears that Mr. Deberry had actually progressed from the Intermediate Unit to the Pre-Transfer Unit—that is, to the step-down unit from which he had originally been removed and to which his complaint requested that he be restored. *See* Notice, filed Aug. 19, 2011 (Attach. 1, Incident Report, dated Mar. 27, 2011) (noting that the misconduct leading to Mr. Deberry's removal to General Population occurred while he was in the "D-B" (i.e., Pre-Transfer) Unit).

## II. DISCUSSION

### A.

Before reaching the merits of Mr. Deberry's appeal, we must be satisfied that we have subject-matter jurisdiction over the dispute. *McKissick v. Yuen*, 618 F.3d 1177, 1196 (10th Cir. 2010) ("[E]very federal appellate court has a special obligation to satisfy itself . . . of its own jurisdiction . . . ." (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)) (internal quotation marks omitted)). As part of that inquiry, we must ensure that a live case or controversy remains before us. As the Supreme Court recently reminded, "It is a basic principle of Article III that a justiciable case or controversy must remain 'extant at all stages of review, not merely at the time the complaint is filed.'" *United States v. Juvenile Male*, 131 S. Ct. 2860, 2864 (2011) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)). "[W]hen events outside the litigation make relief impossible," a case is moot, *Jordan v. Sosa*, 654 F.3d 1012, 1023 (10th Cir. 2011) (quoting 13C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3533.3.1, at 56 (3d ed. 2008)) (internal quotation marks omitted), and a federal court must dismiss for lack of subject-matter jurisdiction.

The mootness inquiry requires that we look to the specific relief requested by a defendant. *See id.* at 1024 ("Constitutional mootness is grounded in the requirement that 'any case or dispute that is presented to a federal court be

5

definite, concrete, and *amenable to specific relief.*'" (emphasis in original) (quoting 15 James W. Moore & Martin H. Redish, *Moore's Federal Practice* § 101.90, at 101–237 (3d ed. 2010))). Here, Mr. Deberry has requested declaratory relief (a declaration that his due-process and equal-protection rights have been infringed), injunctive relief (restoration of his prior status in the Pre-Transfer Unit), and monetary damages. We conclude that the requests for declaratory and injunctive relief are moot, but that the request for damages is not.

Mr. Deberry's subsequent transfer back into General Population in March 2011, for reasons *independent of this case*, moots his request for injunctive relief. Even if we were to grant the relief that Mr. Deberry asks for, it would have "no effect in the real world." *Jordan*, 654 F.3d at 1030 (quoting *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010)) (internal quotation marks omitted). Mr. Deberry would remain in General Population for independent reasons, and we are not situated to rule on the propriety of that later transfer. The same holds true for his request for declaratory relief. Because of the subsequent transfer, any declaratory judgment in Mr. Deberry's favor would not "affect[] the behavior of the defendant[s] toward [him]" and would be, for that reason, purely advisory. *Id.* at 1025 (quoting *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1110 (10th Cir. 2010)) (internal quotation marks omitted). It goes without saying that, as a federal court, we are not in the business of rendering such feckless judgments.

6

Nonetheless, a viable controversy remains before us because Mr. Deberry has requested damages. "[B]y definition claims for past damages cannot be deemed moot." *Lippoldt v. Cole*, 468 F.3d 1204, 1217 (10th Cir. 2006) (alteration in original) (quoting *Taxpayers for the Animas-La Plata Referendum v. Animas-La Plata Water Conservancy Dist.*, 739 F.2d 1472, 1479 (10th Cir. 1984)) (internal quotation marks omitted). Thus, Mr. Deberry's request "for compensatory damages remains a live case or controversy on appeal," and we are required to turn to the merits of his claims. *Id.*; *see Utah Animal Rights Coal.*, 371 F.3d 1248, 1257–58 (10th Cir. 2004) (holding that a request even for "nominal damages of one dollar" satisfies Article III's case or controversy requirement and "require[s]" the court to render a decision "on the merits").

**B.**

Mr. Deberry has abandoned the double-jeopardy claim that he urged below, so two claims remain on appeal: (1) that the defendants violated his procedural-due-process rights under the Fifth Amendment when they failed to immediately return him to the Pre-Transfer Unit following expungement of the incident report, and (2) that those same actions violated his Fifth Amendment right to equal protection[3] because other similarly situated prisoners were not treated like Mr.

---

[3] The Fourteenth Amendment's equal-protection guarantee applies to the federal government through the Fifth Amendment's Due Process Clause. *See Jurado-Gutierrez v. Greene*, 190 F.3d 1135, 1152 (10th Cir. 1999) (citing *Schweiker v. Wilson*, 450 U.S. 221, 226 & n.6 (1981)).

Deberry.[4]

Both the magistrate judge and the district court (hereinafter "the court")

---

[4]     The government contends that Mr. Deberry has not challenged on appeal the district court's decision to grant qualified immunity to defendants and, therefore, that issue is waived. *See* Aplee. Br. at 20 ("Nor has [Mr. Deberry] made any argument opposing the granting of qualified immunity to the Defendants. Consequently, these issues have been waived."). In this regard, the government cites some of our cases that have concluded that a litigant waives an issue by not adequately presenting it in his opening brief. *See id.* (citing, for example, *Herra-Castillo v. Holder*, 573 F.3d 1004, 1010 (10th Cir. 2009)). We think, however, that the government's waiver argument is misguided. In addressing the qualified-immunity issue, the magistrate judge set forth the two elements of the qualified-immunity test. Specifically, the magistrate judge stated, "When analyzing the issue of qualified immunity, I consider two factors. I must determine whether the plaintiff has sufficiently alleged a violation of a statutory or constitutional right. In addition, I must inquire whether the right was clearly established at the time of the violation." R., Vol. 1, at 264. As the magistrate judge was legally authorized to do, *see, e.g., Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."), he resolved the qualified-immunity issue by addressing *solely* the first inquiry—relating to the existence of a constitutional violation *vel non*—determining that Mr. Deberry had not established that his constitutional rights were violated. In other words, the magistrate judge permissibly elided the second inquiry, which focuses on whether, even assuming the Constitution was violated, defendants would be entitled to qualified immunity because the law was not clearly established at the time of the purported violations. The district court adopted the magistrate judge's constitutional analysis. On appeal, Mr. Deberry vigorously contends that his constitutional due-process and equal-protection rights were violated and that the district court erred in holding to the contrary. By doing so, Mr. Deberry in fact has challenged the only element of the qualified-immunity test that the district court actually determined. The government's contention that he waived the qualified-immunity issue is thus misguided. Insofar as the government is suggesting that Mr. Deberry was obliged to address the second, clearly-established-law inquiry—even though the district court did not do so—or suffer the pain of waiver as to the qualified-immunity issue, we reject that suggestion.

thoroughly and thoughtfully analyzed Mr. Deberry's claims. With respect to the due-process claim, the court correctly identified the key question: whether Mr. Deberry has a "liberty interest" in avoiding transfers from the step-down program to General Population at ADX. It analyzed that question under our governing precedent, *Estate of DiMarco v. Wyoming Department of Corrections, Division of Prisons*, 473 F.3d 1334, 1342 (10th Cir. 2007), and considered the four factors that *DiMarco* sets forth. Although the court reasoned that defendants here arguably did not have a legitimate penological justification for refusing to restore Mr. Deberry to his previous rung on the step-down ladder, it found that the conditions in General Population were not extreme and that Mr. Deberry's placement there neither increased the duration of his confinement nor was indeterminate. The court also carefully parsed the Supreme Court's and our precedent on prisoner liberty interests and concluded that Mr. Deberry's transfer from the Pre-Transfer Unit to General Population did not "impose[] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Wilkinson v. Austin*, 545 U.S. 209, 222–23 (2005) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) (internal quotation marks omitted). We believe that the court's analysis and conclusions are eminently sound.

With respect to his equal-protection claim, Mr. Deberry's complaint alleged only that his treatment was "different than that provided [to] similarly situated prisoners" and that "in all other cases, once a finding of guilt was set aside, other

9

prisoners were immediately restored to their prior status." R., Vol. 1, at 66 (Am. Prisoner Compl., filed May 20, 2010). The court found this to be merely conclusory and lacking in factual basis. It pointed to our decision in *Fogle v. Pierson*, where we found "clearly baseless" the "claim that there are other inmates who are similar in every relevant respect." 435 F.3d 1252, 1261 (10th Cir. 2006) (quoting *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994)) (internal quotation marks omitted). We further noted in *Fogle* that a prisoner's "claim that there are no relevant differences between him and other inmates that reasonably might account for their different treatment is not plausible or arguable." *Id.* (quoting *Templeman*, 16 F.3d at 371) (internal quotation marks omitted). We agree with the court that Mr. Deberry did not carry his burden, even at the more generous motion-to-dismiss stage, of sufficiently alleging an equal-protection violation.

### III. CONCLUSION

For the foregoing reasons, we **DISMISS AS MOOT** Mr. Deberry's claims to the extent that he requests equitable relief. Regarding his damages claims for the purported violations of his due-process and equal-protection rights, like the district court, we conclude that Mr. Deberry has not demonstrated "the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal," *Watkins v. Leyba*, 543 F.3d 624, 627 (10th Cir. 2008) (quoting *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997)) (internal

10

quotation marks omitted). Accordingly, we **DENY** his motion for leave to proceed on appeal *in forma pauperis*.

Furthermore, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), we **DISMISS** Mr. Deberry's appeal as frivolous. And this dismissal will constitute a "strike" for purposes of § 1915(g). *See Jennings v. Natrona Cnty. Det. Ctr. Med. Facility*, 175 F.3d 775, 781 (10th Cir. 1999) ("If we dismiss as frivolous a prisoner's appeal of an action for which the district court entered judgment for defendant, the dismissal of the appeal counts as one strike."). It will "count[] against [Mr. Deberry] from the date of the Supreme Court's denial or dismissal of a petition for writ of certiorari, if [Mr. Deberry] file[s] one, or from the date when the time to file a petition for writ of certiorari expire[s], if he [does] not." *Hafed v. Fed. Bureau of Prisons*, 635 F.3d 1172, 1176 (10th Cir. 2011). We remind Mr. Deberry that this § 1915(e)(2)(B)(i) dismissal does not relieve him of the obligation to pay in full the appellate filing fee for the instant matter. *See Kinnell v. Graves*, 265 F.3d 1125, 1129 (10th Cir. 2001) ("The district court correctly dismissed Kinnell's complaint under § 1915(g). Accordingly, we DENY leave to proceed ifp in this court and DISMISS this appeal. Deberry is reminded that the dismissal of his appeal does not relieve him of the responsibility to pay the appellate filing fee in full."); *see also Hudson v. Mason*, 445 F. App'x 139, 141 (10th Cir. 2011); *Tuttamore v. Lappin*, 429 F. App'x 687, 689 (10th Cir. 2011);

11

*Gutierrez v. Torres*, 416 F. App'x 764, 767 (10th Cir. 2011).


ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge